IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John W. GIBSON, Attorney at Law.†

Supreme Court

*No. 84-731-D. Argued May 28, 1985.—*
*Filed June 24, 1985.*
(Also reported in 369 N.W.2d 695.)

For the respondent-appellant, John W. Gibson, there were briefs by *Daniel W. Hildebrand, Amanda J. Kaiser* and *Ross & Stevens, S.C.,* Madison, and oral argument by *Mr. Hildeband.*

For the appellant, Board of Attorneys Professional Responsibility, there was a brief and oral argument by *Frank M. Tuerkheimer,* Madison.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

Attorney John W. Gibson appealed from the referee's findings and conclusions that he had engaged in unprofessional conduct by making sexual advances to a woman client and from the referee's recommendation that a 90-day suspension of his license to practice law in Wis-

---

† Motion for reconsideration denied July 5, 1985, with costs. ABRAHAMSON and CECI, JJ., took no part.

consin is appropriate discipline. The Board of Attorneys Professional Responsibility (Board) cross-appealed from the referee's recommendation for discipline, contending that the unprofessional conduct warrants the revocation of Attorney Gibson's license.

The referee's findings of fact are not clearly erroneous, and we accept them. However, we do not accept the referee's conclusions that Attorney Gibson violated SCR 20.35(1)(c),[1] as charged in the Board's complaint, and that he engaged in professional misconduct by violating enumerated "Ethical Considerations" set forth in the Code of Professional Responsibility, SCR chapter 20.[2] Rather, we conclude that Attorney Gibson's actions violated a standard of professional conduct enunciated by this court in *State v. Heilprin*, 59 Wis. 2d 312, 207 N.W. 2d 878 (1973), thereby warranting the imposition of discipline. We determine that a 90-day suspension of Attorney Gibson's license to practice law is appropriate under the circumstances of this case.

Attorney Gibson was admitted to practice law in Wisconsin in 1961 and has practiced in Madison since 1971. He has not previously been the subject of formal dis-

[1] SCR 20.35(1)(c) provides:
"(1) A lawyer may not intentionally:
". . .
"(c) Prejudice or damage the client during the course of the professional relationship, except as required under SCR 20.36(2)."

[2] The referee concluded that Attorney Gibson's conduct violated the following Code provisions:
"SCR 20.02(5): A lawyer should maintain high standards of professional conduct . . . and should refrain from all illegal and morally reprehensible conduct;
"SCR 20.23: The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties. . . . his or her personal interest . . . should not be permitted to dilute a lawyer's loyalty to a client; and
"SCR 20.48: A lawyer should avoid even the appearance of professional impropriety. . . . A lawyer should promote public confidence in our system and in the legal profession."

ciplinary proceedings. In June, 1981, Roger and Diane Slane consulted Attorney Gibson concerning several legal problems. In addition to financial problems, for which Attorney Gibson represented them in a Chapter 13 proceeding, the couple was experiencing serious marital problems. They met with Attorney Gibson some 20 times over the course of his representation, and Mrs. Slane met with him alone some five times.

Mr. and Mrs. Slane testified at the disciplinary hearing that at almost every meeting they had with him, Attorney Gibson brought up sexually related matters in the course of their discussions. On one occasion he related an incident in which a former client, who appeared to be experiencing mental problems, had asked him to visit her at home and, when he arrived, was dressed in a negligee and suggested they have a sexual relationship. On other occasions, Attorney Gibson complimented Mrs. Slane's appearance in the presence of her husband and told her that she was beautiful, and at one meeting when her husband was absent, he complimented her on her physical attributes.

The alleged misconduct in this disciplinary proceeding occurred during the evening of July 13, 1982. On July 9, 1982, following a violent episode with her husband, Mrs. Slane made application to Dane county circuit court for a temporary restraining order to remove her husband from the couple's home, where they lived with their five children, and a hearing on the motion was scheduled for July 14. On the day before the hearing, Mrs. Slane telephoned Attorney Gibson to make an appointment, and he told her to stop at his office some time during that day and, although he was very busy, he would talk to her. When she arrived at his office, he was engaged in long-distance telephone discussions, and when Mrs. Slane told him that she wanted to know what would happen at the court hearing on the following day, he told her to return at 8:00 o'clock that eve-

ning, as he and his wife would be working at their respective offices that night.

Mrs. Slane met Attorney Gibson at his office as arranged, and Attorney Gibson sat on a sofa and had Mrs. Slane sit in a chair opposite him. He asked her three times to move the chair closer to him, and she did. One of the first things Attorney Gibson told Mrs. Slane at this meeting was that he had been thinking about her problem as he was returning to the office and that he decided to represent her in the marital matter, although she had not asked him to do so. He then told her of some dreams he had been having recently, which included her and her family, and he began discussing a certain religious doctrine concerning how many persons one should love. Attorney Gibson expressed his belief that it was acceptable to have more than one person to love, provided that everything was satisfactory with one's spouse, adding that the spouse should not be aware of the other person.

The discussion continued, and at some point Attorney Gibson told Mrs. Slane to take her clothes off. She declined. Some time thereafter Attorney Gibson made a cup of coffee for himself and a cup of tea for Mrs. Slane. When he went to get the tea, he turned the office lights off, knelt beside Mrs. Slane's chair, began kissing her, put his hands inside her blouse and fondled her breasts, and moved his hands over her pelvic area outside of her clothing. In order to stop him, Mrs. Slane told him she was visualizing being beaten and was frightened. Attorney Gibson stopped at once, got up, turned on the lights, got the tea and returned to converse with Mrs. Slane.

Attorney Gibson told Mrs. Slane that what had happened between them was to be a secret. He told her it was necessary to relieve sexual tensions and that it was something that could continue to happen between them, but it would have to be on his terms,—once a week, once

a month, or once a year. They then discussed her financial problems, after which he telephoned his wife and told her he was ready to leave and would pick her up at her office some two blocks away. Attorney Gibson and Mrs. Slane left the office, went to his car in the basement of the building and drove to her car parked on the street.

Mrs. Slane testified that she had experienced a nightmare during the early morning hours of the next day, which consisted of a replay of the events with Attorney Gibson of the previous evening, and when she awoke she was screaming and began to cry uncontrollably. She testified to having had the same or a similar nightmare frequently since the incident, sometimes as often as two or three times a week.

The morning of the hearing, Mrs. Slane telephoned Judge Bruner's office and briefly told the judge's staff what had occurred the night before and stated that she did not want Attorney Gibson to attend the hearing on the temporary restraining order scheduled for that afternoon. The staff person advised her to go to the Rape Crisis Center, which she did before going to court. She arrived at the courthouse visibly upset, and she was approached and counseled by a social worker whom she had been seeing.

Attorney Gibson appeared at the courtroom before the hearing began. When he was told that Mrs. Slane did not want him there, he asked her husband whether he wanted him to represent him at the hearing. The husband declined.

On the day following the hearing, Mrs. Slane reported the incident with Attorney Gibson to the police. During her interview with an officer investigating the matter, she said she was willing to sign a complaint. The matter apparently was not pursued.

Attorney Gibson denied having made any sexual advances, as Mrs. Slane had claimed, but he admitted that

he had, on occasion, complimented her on her looks and her appearance. He testified that during the meeting with Mrs. Slane in his office on the evening of July 13, 1982, he went over with her an outline explaining the procedure that would be followed at the motion hearing the following day.

In the disciplinary proceeding, the Board presented the testimony of four women, each a former client of Attorney Gibson, who testified that during his representation of them in a variety of matters he engaged in unsolicited sexual conversation and conduct with them. That conduct occurred over a period of time from 1975 to 1982. The Board presented this proof of similar acts to show a plan of which Attorney Gibson's conduct with Mrs. Slane could reasonably be said to be a part, that is, the Board attempted to establish a plan by Attorney Gibson to take sexual advantage of vulnerable female clients, albeit without force and subject to their rejection of his suggestions and advances.

The Board also introduced evidence of Attorney Gibson's conviction in 1971, on his no contest plea of contributing to the delinquency of a minor. The criminal complaint in that matter had charged him with having sexual intercourse with a 17-year-old girl who was living in the Gibson home as a result of a foster home placement. Sentence with withheld on the condition that Attorney Gibson pursue psychiatric treatment. The Board introduced this evidence not as part of its attempt to show a pattern of sexual obsession on the part of Attorney Gibson but as evidence on the question of appropriate discipline.

Attorney Gibson argued that the testimony of the former clients was not admissible because his motive, intent and plan were not at issue in the disciplinary proceeding and the "other acts" evidence was not probative of any motive or intent he had concerning the specific misconduct with which he had been charged. Attorney Gibson contended that the testimony of the former cli-

ents was offered for the sole purpose of showing that he had a propensity to make sexual advances to female clients, and he argued that such evidence is not admissible for that purpose and that, even if it were admissible, its probative value was outweighed by the danger of unfair prejudice and confusion of the issues. Because the referee's findings with respect to what occurred between Attorney Gibson and Mrs. Slane were based on his determination of the credibility of the witnesses and were explicitly based, in part, on the testimony of the former clients, Attorney Gibson argued that these findings of fact should be rejected as clearly erroneous.

It is unnecessary that we address this issue of the admissibility of the former clients' testimony for the reason that the referee made clear in his report that his determination of the credibility issue rested on the testimony of another witness, the Honorable Robert Martin, federal bankruptcy judge, who testified that in numerous appearances before him, Attorney Gibson was not absolutely reliable and failed to meet that standard of truthfulness which the judge considered important in an attorney. The referee stated that he determined the relative credibility of Attorney Gibson and Mrs. Slane as he did "particularly because [Mrs. Slane's testimony] is supported by the testimony of [three of the four former clients], all involving matters of sexual connotations with clients." He stated further, however, "In considering the veracity of Slane and Respondent, the testimony of Judge Martin that Respondent's word is not reliable is sufficient to weigh the scales against Respondent." Consequently, there is sufficient evidence independent of the testimony of the former clients to support the referee's findings, and they are therefore not clearly erroneous.

Attorney Gibson further contended that the facts found by the referee that he made unsolicited sexual advances to his client do not support the conclusion that he thereby violated SCR 20.35(1)(c), which provides:

"(1)  A lawyer may not intentionally:
". . .
"(c)  Prejudice or damage the client during the course of the professional relationship, except as required under SCR 20.36(2)."

He argued that there was no evidence that he intended harm to his client, which he contended was a necessary element to a violation of that ethical rule, and he maintained that his conduct did not cause any harm to his client's legal interests, taking the position that the rule applies only to prejudice or damage to a client's interest in the lawyer's professional representation.  He contended that Mrs. Slane's nightmares and her distraught condition at the hearing on the temporary order, as to which Judge Bruner testified, could not reasonably have been considered to constitute "damage" or "prejudice."

Attorney Gibson also contended that the referee improperly concluded that he engaged in misconduct by violating "Ethical Considerations" which he was not charged with having violated and which have not previously been recognized by this court as constituting a basis for attorney discipline.  In support of his position, he cited SCR 20.002:

"The ethical considerations are aspirational in character and represent the objectives toward which every member of the profession should strive.  They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.
"The disciplinary rules, unlike the ethical considerations, are mandatory in character. . . ."

It is unnecessary to consider Attorney Gibson's contentions concerning the applicability of SCR 20.35(1)

(c) and the specific ethical considerations relied upon by the referee, including the contention that they are vague and overbroad and their application to Attorney Gibson violates his constitutional right to due process; we conclude that Attorney Gibson's actions violated a standard of attorney professional conduct we set forth in *State v. Heilprin, supra,* which involved an attorney charged with conduct similar to but more aggravated than Attorney Gibson's. In *Heilprin* we stated: "Conduct of the type engaged in by Heilprin cannot be condoned, whatever the cause. The public must not be exposed to this type of action from members of the legal profession." 59 Wis. 2d 312, 322. Consequently, Attorney Gibson's actions toward his client subject him to discipline for misconduct. SCR 21.05(5).[3]

We reiterate our determination in *Heilprin* that the public must not be subjected to unsolicited sexual conduct by attorneys in the context of an attorney-client relationship. Frequently, the client is in some difficulty and, as a result, is particularly vulnerable to improper advances made by the attorney. The client rightfully looks upon the attorney as legal advisor, one who will act in the client's best interests. Often, a client will be reluctant to terminate representation in response to an attorney's improper conduct for fear of losing time and money already invested in the attorney's representation.

The attorney stands in a fiduciary relationship with the client and should exercise professional judgment "solely for the benefit of the client and free of compromising influences and loyalties." SCR 20.23(1). By making unsolicited sexual advances to a client, an attorney perverts the very essence of the lawyer-client

---

[3] SCR 21.05 provides:

"**Grounds for discipline.** An attorney is subject to discipline for misconduct. Misconduct is conduct that violates:

". . .

"(5) A standard of professional conduct as defined by the supreme court by rule, order or decision."

relationship. Such egregious conduct most certainly warrants discipline.

The referee recommended a 90-day suspension of Attorney Gibson's license to practice law as appropriate discipline, and that recommendation was explicitly based on the testimony of the former clients. However, we do not rely on that recommendation in determining appropriate discipline in this case. In imposing a 90-day suspension of the license of Attorney Gibson to practice law in Wisconsin, we do not consider, as did the referee, the cumulative testimony in the record or Attorney Gibson's prior conviction; the discipline we impose is in response to only that conduct Attorney Gibson was found to have engaged in with Mrs. Slane.

IT IS ORDERED that the license of Attorney John W. Gibson to practice law in Wisconsin is suspended for a period of 90 days, commencing August 1, 1985.

IT IS FURTHER ORDERED that within 120 days of the date of this order Attorney John W. Gibson pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing by Attorney Gibson of his inability to pay the costs within the time specified, the license of Attorney John W. Gibson to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Attorney John W. Gibson comply with the provisions of SCR 22.26 concerning the requirements of a person whose license to practice law in Wisconsin has been suspended.

CECI, J., dissents from that portion of the court's order imposing discipline and would impose discipline more severe than a 90-day suspension of Attorney Gibson's license to practice law.

ABAHAMSON, J., took no part.