**The PEOPLE of the State of Colorado, Complainant,**

v.

**William V. CROSSMAN, Jr., Attorney–Respondent.**

**No. 93SA49.**

Supreme Court of Colorado, En Banc.

April 19, 1993.

---

Linda Donnelly, Disciplinary Counsel, Sandra J. Pfaff, Asst. Disciplinary Counsel, Denver, for complainant.

Jeffrey A. Springer, Denver, for respondent.

PER CURIAM.

The respondent in this attorney disciplinary proceeding solicited sexual favors in exchange for legal fees on three separate occasions with three prospective clients. The assistant disciplinary counsel and the respondent entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. The parties have recommended that the respondent be disciplined by a period of suspension between ninety days and one year and one day. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation and agreement, with the recommendation that the respondent be suspended for one year and one day, and with the additional provision that at the time the respondent applies for reinstatement, he present more detailed information as to the cause of the misconduct and the likelihood of its recurrence. The respondent has not excepted to the inquiry panel's action, or asked that the stipulation be withdrawn. We accept the stipulation and agreement, and the recommendation of the inquiry panel. We order that the respondent be suspended for one year and one day, that he satisfy certain conditions before he may be reinstated, and that he pay the costs of these proceedings.

I

The respondent was admitted to the bar of this court on October 4, 1968, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). In the stipulation and agreement, the respondent and the assistant disciplinary counsel stipulated to the following facts and violations of the Code of Professional Responsibility.

A

On or about June 10, 1991, the respondent told a prospective female client in a dissolution of marriage case that he would reduce his usual legal fee in return for sexual favors. The respondent asked the prospective client to come to the respondent's office wearing "a teddy that you can see through, with nothing under it ... no need to bring anything else...."

The respondent admitted that his conduct violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), and DR 5–101(A) (except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests). *See People v. Zeilinger*, 814 P.2d 808, 809 (Colo.1991) (engaging in sexual relationship with client whom attorney represented in marital dissolution matter violates DR 1–102(A)(6) and DR 5–101(A)); *People v. Gibbons*, 685 P.2d 168, 175 (Colo. 1984) (lawyer's sexual relationship with client, who was a defendant in a criminal proceeding, violated DR 5–101(A)); *see generally* Gregory G. Sarno, Annotation, *Sexual Misconduct as Ground for Disciplining Attorney or Judge*, 43 A.L.R. 4th 1062 (1986 & Supp.1992).

B

In a meeting in his office on or about August 13, 1991, the respondent offered to assist another prospective client, who had

consulted him about a dissolution of marriage, to obtain employment with a construction company. Part of her job would be to offer sexual favors to employees of the company. The respondent asked the prospective client about her sexual habits, asked her for sexual contact, and kissed her breast. He also suggested that he would reduce his usual fee in return for sexual favors. The respondent did not, however, reduce his legal fees in return for sexual favors, and he did not assist the prospective client to obtain any kind of employment. In the stipulation, the respondent denied that he had the intent or the ability to assist the prospective client to obtain the type of employment that he discussed with her. On August 12, 1992, the respondent pleaded guilty to, and was convicted of, harassment arising from his physical contact with the prospective client, a class 3 misdemeanor, in violation of section 18–9–111(1)(a), 8B C.R.S. (1986).[1] Although not specified in the stipulation, materials submitted to the Grievance Committee by the respondent indicate that he was sentenced to a term of supervised probation.

As the respondent has stipulated, his conduct violated DR 1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law), and DR 5–101(A) (a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests), as well as C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline).

### C

On September 5, 1991, the respondent told an undercover agent employed by the Arapahoe County District Attorney's Office, who was posing as a prospective client, that he would reduce his usual legal fee in return for her sexual favors. The respondent asked the undercover agent to meet him later at a hotel. He later met the agent at a motel restaurant, but did not use his room reservation. By the foregoing conduct, the respondent again violated DR 1–102(A)(6) and DR 5–101(A).

### II

In the stipulation and agreement, the respondent and the assistant disciplinary counsel recommended that the respondent be suspended from the practice of law for a period between ninety days and one year and one day. The inquiry panel approved the stipulation and recommended that the respondent be suspended for one year and one day, and that at the time he applies for reinstatement, the respondent present more detailed information as to the cause of the misconduct and the likelihood of its recurrence.

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (ABA *Standards*), in the absence of mitigating or aggravating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA *Standards* 4.32. *See also id.* at 5.12 ("Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."); *id.* at 7.2 ("Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.").

We agree with the Supreme Court of Florida that "[i]mproprieties that directly

---

1. Section 18–9–111(1)(a), 8B C.R.S. (1986), provides in relevant part:

     **18–9–111. Harassment.** (1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he:

    (a) Strikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact....

and intentionally harm others *always* are serious offenses in the eyes of this Court." *Florida Bar v. Samaha*, 557 So.2d 1349, 1350 (Fla.1990) (emphasis in original). Conduct such as the respondent's "is particularly repugnant while the client is dependent upon the attorney for guidance and assistance." *In re Adams*, 428 N.E.2d 786, 787 (Ind.1981). The lawyer stands in a fiduciary relationship with the client and by making unsolicited sexual advances to a client "perverts the very essence of the lawyer-client relationship." *In re Disciplinary Proceedings Against Gibson*, 124 Wis.2d 466, 369 N.W.2d 695, 699–700 (1985), *appeal dism'd sub nom. Gibson v. Board of Attorneys Professional Responsibility of Wisconsin*, 474 U.S. 976, 106 S.Ct. 375, 88 L.Ed.2d 330 (1985).

When confronted with professional misconduct such as the respondent's, courts in other jurisdictions have found suspension warranted. *See Samaha*, 557 So.2d 1349 (male attorney's taking of photographs of seminude female client and touching the client on the back and thighs, under pretext of necessity for preparation of personal injury action, warrants suspension for one year and thereafter until rehabilitation has been established); *In re Wood*, 265 Ind. 616, 358 N.E.2d 128 (1976) (suspension for period of not less than one year appropriate where male attorney attempted to exchange legal services for sexual favors from two female clients); *Committee on Professional Ethics & Conduct of the Iowa State Bar Ass'n v. Hill*, 436 N.W.2d 57 (Iowa 1989) (male attorney suspended for engaging in sexual relationship with a female client in a divorce action involving custody of children); *In re Littleton*, 719 S.W.2d 772 (Mo.1986) (improper sexual advances by male attorney towards female client and retaining as legal fee money accepted to pay her bond warrant indefinite suspension with leave to apply for reinstatement after six months); *Dayton Bar Ass'n v. Sams*, 41 Ohio St.3d 11, 535 N.E.2d 298 (1989) (male attorney suspended for six months after he knowingly solicited female client for purpose of engaging in sexual intercourse in exchange for legal services and purchased controlled substance from client); *Gibson*, 369 N.W.2d 695 (unsolicited sexual advances by male attorney towards female client warrant ninety-day suspension); *cf. Adams*, 428 N.E.2d 786 (public reprimand proper where male attorney grabbed female client, kissed her, and raised her blouse).

The factors in aggravation are substantial and include: (1) the respondent has previously received two letters of admonition for neglect of legal matters, ABA *Standards* 9.22(a); (2) a dishonest and selfish motive on the respondent's part, *id.* at 9.22(b); (3) a pattern of misconduct, *id.* at 9.22(c); (4) multiple offenses, *id.* at 9.22(d); (5) the special vulnerability of the victims, *id.* at 9.22(h); and (6) the respondent's substantial experience in the practice of law, *id.* at 9.22(i).

As we recognized in *Zeilinger*, 814 P.2d at 809, dissolution of marriage clients are especially vulnerable to the harm inflicted by the lawyer's attempts to engage in a sexual relationship. Two of the victims in this case were such prospective clients, and the respondent subjectively believed that the third victim was a marital dissolution client.

The respondent asserts that there are numerous factors in mitigation that support imposition of a more lenient sanction. We find several of these factors particularly significant. First, although there were multiple instances of misconduct, they occurred over a relatively short period of time during which the respondent was undergoing personal and emotional problems. ABA *Standards* 9.32(c). Shortly after the last incident, he initiated contact with a psychologist and voluntarily underwent counseling to address these problems. A September 28, 1992, letter from the psychologist indicated that "[a] reoccurrence of [the offenses] is seen as unlikely." Furthermore, the respondent has already received the sanction of a criminal conviction and sentence of probation imposed upon him as a result of pleading guilty to harassment. *Id.* at 9.32(k). He has also been the subject of several newspaper articles that reported his misconduct to the local community and therefore has already suffered

some adverse consequences of his conduct. *Id.; cf. Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 196 (3rd Cir.1988) ("adverse press scrutiny" is a mitigating factor to be considered in determining sanction against lawyer under Fed. R.Civ.P. 11 for filing frivolous complaint). Moreover, the respondent has admitted his misconduct, ABA *Standards* 9.32(e), has been cooperative in the disciplinary proceedings, *id.*, and, recognizing the significant impropriety of his actions, has demonstrated genuine remorse, *id.* at 9.32(1). We also find persuasive the respondent's otherwise excellent reputation in his local legal community where others regard him as an exceptionally competent and professional attorney. But for these factors in mitigation, we would reject the recommended disciplinary sanction as too lenient.

Considering the extensive mitigating factors, as well as the aggravating factors and the gravity of the misconduct, we conclude that suspension for one year and one day is an appropriate sanction. *See Samaha*, 557 So.2d 1349 (suspension for one year and thereafter until rehabilitation has been established was warranted); *Wood*, 358 N.E.2d 128 (suspension for period not less than one year appropriate for attempt to exchange legal services for sexual favors). Moreover, as the inquiry panel has recommended, when the respondent petitions for reinstatement he shall be required to present more detailed information as to the cause of the misconduct and the likelihood of its recurrence.

### III

Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct. It is hereby ordered that William V. Crossman, Jr., be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that Crossman must comply with C.R.C.P. 241.22(b)–(d) before he may be reinstated. It is also ordered that Crossman pay the costs of this proceeding in the amount of $49.54 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.