**In re Anonymous No. 116 D.B. 93**

Disciplinary Board Docket no. 116 D.B. 93.

KERNS, *Member,* July 12, 1995—

## I. HISTORY OF PROCEEDINGS

The Office of Disciplinary Counsel filed a petition for discipline in this matter on December 2, 1993. The respondent filed an answer to the petition on December 30, 1993, denying the allegations of misconduct.

On January 7, 1994, the matter was referred to Hearing Committee [    ], comprised of [    ], Esquire, chairman, and members [    ], Esquire, and [    ], Esquire.

A hearing was held on March 1, 1994.

On May 27, 1994, the Hearing Committee filed its report recommending that respondent receive a public censure without probation.

Both parties filed briefs on exceptions to the Hearing Committee's report. Respondent requested oral argument.

A panel of the Disciplinary Board, consisting of Robert J. Kerns, Esquire, chairman, Alfred Marroletti, Esquire, and Thomas A. Leonard, Esquire, was convened to hear oral argument in the matter. Said argument was held on August 19, 1994.

The matter was adjudicated at the September 29, 1994 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

The facts, adopted primarily from the findings of the Hearing Committee, are:

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement,

with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], Esquire, is an attorney admitted to practice law in the Commonwealth of Pennsylvania on or about December 20, 1973. He maintains an office at [    ].

(3) Respondent is also admitted to practice law in the State of [    ]. He is a member of the Pennsylvania and [    ] Bar Associations, as well as the [    ] County and [    ] County Bar Associations.

(4) Complainant's son, a minor, engaged respondent on or about March or April of 1993 with reference to summary traffic offenses in which the Pennsylvania State Police were involved. The relationship between complainant, her son and her husband and respondent was excellent.

(5) On the morning of May 28, 1993, the complainant met with the state police officer to discuss the matter concerning her son, which meeting resulted in a confrontation with the officer.

(6) After leaving the police station, the complainant arrived at respondent's office at approximately noon or shortly thereafter.

(7) When she arrived, the complainant was emotionally distraught from her confrontation with the police.

(8) After some conversation between complainant and respondent concerning the matter, respondent suggested to complainant that they go to lunch.

(9) Respondent then, without permission, held complainant tightly and placed his tongue in complainant's mouth.

(10) Already emotionally upset from her previous contact with the state police, now shocked by the behavior of the respondent, the complainant became concerned and reminded respondent that they were to leave his office to go to lunch.

(11) On the same date, May 28, 1993, while the complainant and respondent were riding in his automobile, the respondent placed his hand across the complainant's breast, without her permission, and against her consent.

(12) After respondent removed his hand from complainant, he suggested that they "do fun dirty things."

(13) After lunch, the complainant called her son's psychologist, Dr. [A], informed her of the incident and requested advice.

(14) Dr. [A], the psychologist, advised complainant to seek another attorney, to report the misconduct to the Disciplinary Board, and to discuss the matter with complainant's husband.

(15) The complainant, early in the same evening, told her husband about the respondent's assaults.

(16) On May 29, 1993, the respondent communicated with the complainant and her husband and apologized for his behavior.

(17) On May 29, 1993, the respondent returned complainant's son's file to the complainant by courier mail over the Memorial Day weekend.

(18) On May 29, 1993, the complainant's husband filed a complaint against respondent with the Disciplinary Board.

(19) On May 29, 1993, the complainant and her husband sought the advice of Attorney [B] with reference to seeking new counsel, preferably a female attorney, to handle the complainant's problem and also the complainant's son's legal difficulties.

(20) Attorney [B] referred the complainant and her husband to Attorney [C]. The complainant advised Attorney [C] that the decision to terminate the services of the respondent was based upon the assault of the complainant.

(21) Respondent has no prior record of discipline.

(22) Respondent presented a number of character witnesses testifying to respondent's reputation in the civic and legal community as a truthful, honest and moral person.

## III. CONCLUSIONS OF LAW

Respondent's conduct has violated the following Rule of Professional Conduct:

(1) R.P.C. 8.4(b)—Committing a criminal act that reflects adversely on the honesty, trustworthiness or fitness as a lawyer in other respects.

## IV. DISCUSSION

We begin by examining the nature of the misconduct alleged and the resulting charges levied against respondent. Our review is de novo with deference accorded to the findings of the trier of fact. *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 20, 584 A.2d 296, 298 (1990).

Succinctly, the facts support a conclusion that respondent's physical assault of the complainant, undertaken without her permission, constituted the crime of indecent assault in violation of 18 Pa.C.S. §3126. In

the context of the Rules of Professional Conduct, respondent was charged with violating Rule 1.7(b) which provides that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own interest, and Rule 8.4(b), which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. Keeping in mind that the rules are not exhaustive in defining the parameters of professional decorum, but, rather, provide a structure for the ethical practice of law, we review the specifics of the misbehavior alleged.

While the Hearing Committee determined that its findings of fact evidenced violations of both of the rules charged in the petition, we are not convinced that the conduct of respondent falls precisely within the definitional confines of Rule 1.7(b).

Concerning the Rule 1.7(b) violation, the Hearing Committee acknowledged the absence of an attorney-client relationship between the complainant and respondent, but nonetheless concluded that the professional relationship between respondent and the complainant's son sufficed to place the allegation of misconduct in the context of the attorney-client relationship.

We disagree. The preamble to the rules discusses a lawyer's responsibilities and the scope of his professional obligations. Regarding whether a lawyer-client relationship exists in a particular situation, the introduction informs that relationship's presence "can depend on the circumstances and may be a question of fact."

Here, the facts do not suggest a finding that respondent violated the conflict of interest provision of Rule 1.7(b). The Hearing Committee's own finding on the initial

employment of respondent describes the relationship as initiated by the complainant's son. Acknowledging the minor status of the son, and the payment of respondent's fee by the complainant and her husband, these factors are not sufficient to invoke the provisions of the conflict of interest rule. The complainant's visit to respondent's office on the date in question was vague in its purpose. Although the interpretation is that complainant was seeking respondent's legal assistance concerning her confrontation with the state police, the specifics of the establishment of any professional relationship are, at best, nebulous. Since there is no discernible evidence that respondent assumed a case on behalf of complainant, no conflict existed. We thus conclude that a violation of Rule 1.7(b) has not been proven by clear and convincing evidence. See *Matter of Leopold,* 469 Pa. 384, 394 n.1, 366 A.2d 227, 232 n.1 (1976) (burden of proof in attorney disciplinary matters is preponderance of evidence wherein proof of conduct must be clear and satisfactory).

To establish a violation of Rule 8.4(b), the evidence must demonstrate that the attorney committed a criminal act which is contrary to a lawyer's fitness to practice law. The rule does not require a criminal conviction as a precursor to its implementation. See *In re Anonymous No. 42 D.B. 87,* 5 D.&C.4th 613 (1987).

There is little doubt that the testimony of complainant described misbehavior on the part of respondent which constituted an indecent assault in violation of 18 Pa.C.S. §3216.

One point at issue concerning the criminal conduct focuses on the credibility of the complainant's and her husband's testimony. Respondent asserts that complainant's version of the events was inaccurate and belied by both her decision to have lunch with respondent

following the initial offensive touching and her subsequent plea of guilty to the charges arising from her confrontation with the state police earlier that day. However, despite respondent's protestations to the contrary, nothing in the record indicates that the Hearing Committee's favorable opinion on complainant's credibility should be disturbed. In matters of witness credibility, great deference is accorded to determinations of the trier of fact. *Office of Disciplinary Counsel v. Wittmaack,* 513 Pa. 609, 614, 522 A.2d 522, 524 (1987).

We credit, also, the testimony of Dr. [A], the psychologist to whom complainant confided in after the assault, as corroborative of the complainant's testimony. While respondent seeks to dispute the legal significance of Dr. [A's] testimony citing the issues of the impart of prompt complaint and breadth of expert opinion, it is clear that the Hearing Committee correctly evaluated Dr. [A's] testimony as supportive of the complainant's version of the contact with respondent and not as a professional opinion or diagnosis of the complainant's mental state.

We move to the question of the consequence of the respondent's sexual assault of the complainant. For guidance, we look to how similar matters have been handled in other jurisdictions. In a Wisconsin disciplinary proceeding, *In re Gibson,* 369 N.W.2d 695 (Wis. 1985), an attorney was suspended for indecent touching of a client. The court determined that "[b]y making unsolicited sexual advances to a client, an attorney prevents the very essence of the lawyer/client relationship. Such egregious conduct most certainly warrants discipline." *Id.* at 699-700.

Sanctions for improper physical contact by attorneys has not been limited to situations arising in the lawyer-client relationship. In *Matter of Discipline of Peters,*

428 N.W.2d 375 (Minn. 1988), the dean of a law school was disciplined for improper physical conduct with school employees. In its holding the court disregarded the import of the presence of a lawyer-client relationship:

"The ultimate question, of course, is whether respondent's wrongful conduct requires discipline . . . [the presence of an attorney-client relationship [is not a] necessary element] to a breach of ethical responsibility by reason of misconduct of a sexual nature." *Id.* at 380-81.

The impropriety of respondent's behavior towards complainant is without question. That this criminal conduct impinged on respondent's solemn duty of trustworthiness and public responsibility is likewise unassailable. The comment to Rule 8.4 suggests the offenses involving breach of trust "can indicate indifference to legal obligation." While complainant was not respondent's client, it is apparent that she placed her confidence in respondent as a professional, a trust severely breached by his criminal misbehavior. Therefore, some discipline against respondent is warranted.

The Hearing Committee, concluding that two Disciplinary Rules had been violated, recommended that respondent receive a public censure. The Office of Disciplinary Counsel excepted to this recommendation, urging that a suspension, which would require a hearing before reinstatement of privileges be effectuated, would be appropriate. And, while respondent persisted in his blanket denial of the charges, he nonetheless suggested that the discipline be reduced to a private reprimand.

The spirit of the disciplinary system must be considered in determining the proper sanction for attorney misconduct. The goal of the system is to uphold the integrity of the bar by protecting the courts and the public from unfit lawyers. *Office of Disciplinary Coun-*

*sel v. Lucarini,* 504 Pa. 271, 281, 472 A.2d 186, 190 (1983). Because the disciplinary system is designed to evaluate to what degree the particular misconduct reflects on unfitness to practice law, *Lucarini* suggests that each case be decided on an individual basis.

We conclude that respondent's conduct here supports a recommendation of a private reprimand. We find, first, support in case law. In *In re Anonymous No. 115 D.B. 88,* 11 D.&C.4th 36 (1990), an attorney was convicted of two counts of importing child pornography, thus, involving, in part, an issue of sexual morality. Although the board recommended a three year suspension, the Supreme Court ordered a private reprimand. In a case involving assault, not of a sexual nature, see *In re Anonymous No. 39 D.B. 85,* 47 D.&C.3d 376 (1987), an attorney struck a union organizer. This attorney also received a private reprimand.

Considering respondent's prior clean disciplinary record, the credible testimony offered as to his good character, and our decision that a Rule 1.7(b) violation did not occur, we determine that a private reprimand would be an appropriate discipline in this matter. We do not minimize the egregious nature of respondent's misconduct, but do concur that the lesser sanction is consistent with case law and the purpose of the disciplinary system.

## V. DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that the respondent, [    ], shall receive a private reprimand. The expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Paris, Saltz and Miller dissented and would dismiss the charges.

Board Members Leonard and Witherel did not participate in the adjudication.

## ORDER

And now, July 12, 1995, upon consideration of the report and recommendation of Hearing Committee [    ] filed May 27, 1994, it is hereby ordered that the said [respondent] of [    ] County be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement.

Costs are to be paid by the respondent.