IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST John W. GIBSON, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, Complainant-Appellant-Cross-Respondent,

v.

JOHN W. GIBSON, Respondent-Respondent-Cross-Appellant.

Supreme Court

*No. 98–0112–D. Oral argument October 12, 1999.—Decided November 5, 1999.*

(Also reported in 601 N.W.2d 824.)

For the complainant-appellant and cross respondent, there were briefs by *Marc. T. McCrory* and

*Brennan, Steil, Basting & MacDougall, S.C.,* Janesville and oral argument by *Marc T. McCrory.*

For the respondent-respondent and cross appellant there were briefs and oral argument by *John W. Gibson,* Madison.

¶ 1. PER CURIAM. The Board of Attorneys Professional Responsibility (Board) appealed the recommendation of the referee that the license of John W. Gibson to practice law in Wisconsin be suspended as discipline for giving incompetent representation to clients in a bankruptcy matter and failing to communicate adequately with those clients concerning their opportunity to protect and promote their interests in that matter. The Board contended that the seriousness of that misconduct, viewed in light of prior discipline that has been imposed on Attorney Gibson for professional misconduct, warrants a six-month license suspension. Attorney Gibson cross-appealed from the referee's conclusions that his conduct in the bankruptcy matter violated the Rules of Professional Conduct for Attorneys.

¶ 2. We determine that the referee properly concluded that Attorney Gibson engaged in professional misconduct in his representation of the clients in the bankruptcy matter. We determine further that a six-month license suspension is the appropriate discipline to impose for that misconduct. By his conduct established in this proceeding, Attorney Gibson again has demonstrated that he is unfit to provide clients with the competent and diligent representation that they have a right to expect. Under our rules,[1] a six-month

---

[1] The rule on reinstatement, SCR 22.28, provides in pertinent part:

license suspension will require that before his license may be reinstated he establish to the court's satisfac-

**Reinstatement**

...

(3) An attorney whose license is revoked, suspended for 6 months or more for misconduct, or suspended for medical incapacity shall not resume practice until the license is reinstated by order of the supreme court. A petition for reinstatement from a suspension for a definite term may be filed at any time commencing 3 months prior to the expiration of the suspension period. A petition for reinstatement from a license revocation may be filed at any time commencing 5 years after the effective date of revocation. A petition for reinstatement from a suspension for medical incapacity may be filed at any time. A petition for reinstatement shall be filed with the court and a copy shall be filed with the administrator.

(4) The petition for reinstatement shall show that:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law, including a list of specific activities pursued.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements of SCR 22.26.

(i) The petitioner indicates the proposed use of the license if reinstated.

(j) The petitioner has fully described all business activities during the period of suspension or revocation.

(k) The petitioner has made restitution or settled all claims from persons injured or harmed by petitioner's misconduct or, if the

tion that he is fit to represent others in the legal system.

¶ 3. Attorney Gibson was licensed to practice law in 1961 and practices in Madison. He has been disciplined twice for professional misconduct. In 1985 the court suspended his license for 90 days for making sexual advances to a client. *Disciplinary Proceedings Against Gibson*, 124 Wis. 2d 466, 369 N.W.2d 695. In 1997 the court suspended his license for 60 days for continuing to practice law while suspended from membership in the State Bar, misrepresenting to an opposing party in litigation that his client had filed for bankruptcy, having clients sign bankruptcy petitions and forms in blank, delegating to nonlawyer staff in his

restitution is not complete, petitioner's explanation of the failure or inability to do so.

(5) The administrator shall investigate the eligibility of the petitioner for reinstatement and file a report and recommendation with the board. At least 30 days prior to the hearing on the petition before a professional responsibility committee, the administrator shall publish a notice in a newspaper of general circulation in any county in which the petitioner maintained an office prior to suspension or revocation and in the county of the petitioner's residence during the suspension or revocation and in an official publication of the state bar.

The notice shall contain a brief statement of the nature and date of suspension or revocation, the matters required to be proved for reinstatement and the date on which a hearing on the petition will be held before a professional responsibility committee. In the case of a license suspension, the hearing shall not be held prior to the expiration of the period of suspension.

(6) The petitioner has the burden of demonstrating by clear and convincing evidence that the petitioner has the moral character to practice law in this state and that the petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice or subversive of the public interest. The petitioner shall also demonstrate by clear and convincing evidence full compliance with the terms of the order of suspension or revocation and the requirements of SCR 22.26. . . .

office the decision whether and when to file bankruptcy petitions on behalf of clients and failing to supervise that staff properly, and opposing motions of the bankruptcy trustee to dismiss his clients' bankruptcy petitions for his own failure to include repayment plans. *Disciplinary Proceedings Against Gibson*, 213 Wis. 2d 189, 570 N.W.2d 249. The referee in the instant proceeding, Attorney Norman Anderson, made the following findings of fact, which the parties do not contest.

¶ 4. In October 1995, Attorney Gibson filed a debt adjustment plan under Chapter 13 of the federal bankruptcy law on behalf of a couple against whom a foreclosure action had been commenced the preceding month by their mortgagee. The clients believed they had to sell their house because they needed to get out of debt, although they preferred to keep the house if they could. When the clients failed to make mortgage payments called for in the plan, the bankruptcy court dismissed the plan in early 1996. After Attorney Gibson filed a new plan in April 1996, the mortgagee discovered that its mortgage had not been recorded. As a consequence, the mortgagee was in the position of an unsecured creditor in the bankruptcy matter and would not be able to record its mortgage unless the bankruptcy court lifted the stay of further proceedings against the debtors that had been ordered.

¶ 5. If the mortgagee could not perfect its mortgage by recording it and the clients completed the Chapter 13 bankruptcy, the mortgage would be an unsecured debt and receive appreciably different treatment than if it had been recorded. In a Chapter 13 proceeding, mortgage holders with perfected mortgages must be paid in full, while unsecured creditors may be paid only a percentage of their claims and, in

some cases, nothing, depending on the debtor's income and liabilities and the bankruptcy plan that is approved.

¶ 6. The mortgagee filed a motion asking the bankruptcy court to lift the stay to allow it to record its mortgage. Copies of the motion and notice of motion were mailed to Attorney Gibson, to his clients, and to the bankruptcy trustee on April 24, 1996. Pursuant to bankruptcy practice, the notice of motion stated that unless a written objection and request for hearing were filed by May 9, 1996, the bankruptcy court would enter an order granting the motion. Counsel for the mortgagee estimated the chance that Attorney Gibson would file an objection to the motion at better than 50 percent. If he did, the mortgagee's attorney considered the chance of having the stay lifted to be less than 50 percent.

¶ 7. During the time for objection, the mortgagee's attorney spoke to Attorney Gibson, who said he was not going to object to the motion. When no objection was filed, the bankruptcy court signed the order lifting the stay, the mortgage was recorded, and the mortgagee became a secured creditor with a perfected lien. The referee found that if Attorney Gibson had objected and the objection had been sustained, the mortgagee "would have been at the mercy of the debtors and the Court as to how much, if any, of the mortgage would be paid under the debtor's Chapter 13 Plan if it was confirmed."

¶ 8. Based on statements of the bankruptcy judge at the plan confirmation hearing, the mortgagee's attorney concluded that he would have had no chance of succeeding on the motion to lift the stay if Attorney Gibson had filed an objection. The judge said,

284

Somehow [the mortgagee] went from being unsecured to being secured by virtue of the debtor sitting on its rights where they could have been knocked out and all creditors would have been paid. It seems like a sad situation where the debtor had the secured creditor right where they wanted them and could have profited from the situation. They had them in bankruptcy in a timely fashion and then really to the disadvantage of all other creditors let them out. . . . .

. . .

I really can't believe, Mr. Gibson, that you understood what you were doing on behalf of your clients or that you explained to them adequately for them to understand that they were essentially providing a mortgage that wouldn't otherwise exist on a debt that could have been discharged. . .through regular payments. These are people who could have kept their house if they wanted to. I'm just staggered by it.

The bankruptcy judge then declined to confirm the proposed debt adjustment plan. Ultimately, the mortgagee foreclosed on its mortgage, and the clients' home was sold at a sheriff's sale.

¶ 9. The referee found that, on the basis of his own testimony, Attorney Gibson was uncertain of the full impact of the motion to lift the stay. Attorney Gibson testified that he telephoned the bankruptcy trustee for advice about the motion, but the trustee was not able to discuss the matter with him at that time because he had to make a court appearance. Attorney Gibson had no further discussion with the trustee about the motion until after it had been granted. Then, when the trustee asked him why he had not objected to the motion, Attorney Gibson responded that he was not aware the motion had been filed.

¶ 10. At the confirmation hearing, Attorney Gibson told the court that he had explained the motion to his clients and told them an objection likely would be unsuccessful. He stated that it was their decision not to object. The trustee testified that he was surprised by Attorney Gibson's statements because of what he had said earlier. The trustee promptly informed the court that when he asked him why he had not opposed the motion, Attorney Gibson told him he was unaware the motion had been filed. The trustee testified that he was upset by Attorney Gibson's disservice to his clients and by the fact that the granting of the motion destroyed any chance that the debt adjustment plan would be confirmed.

¶ 11. Following the confirmation hearing, Attorney Gibson and his clients went to the bankruptcy trustee's office to discuss with him why the plan had not been confirmed. There, the trustee explained the advantages and disadvantages of objecting to the mortgagee's motion. The trustee testified that the clients were "stunned," for they had not heard before that they had the option to oppose the motion.

¶ 12. The clients testified at the disciplinary hearing that Attorney Gibson had not discussed the mortgagee's motion and its ramifications with them and that they first learned about the motion after it had been granted. Attorney Gibson, on the other hand, testified that he had discussed the motion with the wife, who decided not to object because it might delay the sale of the house. Based on that conflicting testimony, the referee found that even if he did have a conversation with the wife about the motion, Attorney Gibson did not discuss the full consequences of the grant or denial of it in such a way that the clients could understand their options and make a rational decision

286

whether to object to it. The referee found the testimony of the clients clear and convincing that if the motion and its consequences had been explained to them, they would have objected to it.

¶ 13. When he filed the initial plan and schedules in the matter, Attorney Gibson did not include a homestead exemption claim. The bankruptcy trustee testified in the instant proceeding that it is unheard of that a debtor would not claim the $40,000 homestead exemption under state law or the $15,000 per spouse exemption under federal law. He said that if the mortgagee's motion had been opposed successfully, the unperfected mortgage would have been treated as an unsecured claim, the clients then could have claimed a $40,000 equity in their homestead, and there would have been additional money available to pay their creditors. It was clear to the trustee that the court would have prevented the mortgagee from recording the mortgage and would have treated it as an unsecured creditor. Accordingly, he testified, Attorney Gibson's failure to object to the motion caused the clients to lose the opportunity to use the $40,000 exemption to keep their home and have money available to pay their debts. The referee found that the clients had been unaware that they could have retained a $40,000 equity in their home if the homestead exemption claim had been made and that they learned of that opportunity for the first time in the trustee's office.

¶ 14. The bankruptcy judge testified in the instant proceeding that Attorney Gibson should have objected to the mortgagee's motion and that there was virtually no potential financial detriment to the clients in doing so; not objecting to it, however, resulted in an enormous financial detriment, as it eliminated the clients' opportunity to use the $40,000 homestead

exemption. The judge testified further that if Attorney Gibson had objected to the motion, he could not imagine having denied it.

¶ 15. The bankruptcy judge was familiar with Attorney Gibson's bankruptcy practice, which dealt predominantly with Chapter 13 proceedings. That judge had issued punitive sanctions against Attorney Gibson on two occasions because of frivolous objections he had made to motions to dismiss plans when the grounds for dismissal were patently clear and it appeared he had not discussed the matters with his clients and obtained their authorization to object to the dismissals. Responding to Attorney Gibson's testimony that he was afraid to file an objection to the motion to lift the stay for fear that he would be sanctioned by the judge, the judge said he could not imagine sanctioning anyone for objecting to that motion.

¶ 16. After the Board commenced its investigation into his conduct in this matter, Attorney Gibson telephoned the wife he had represented and insisted that she testify that she had had a conversation with him about the motion to lift the stay. When the client told him that she could not recall such a conversation ever taking place and that she would not lie for him, Attorney Gibson became angry.

¶ 17. On the basis of the foregoing facts, the referee concluded that Attorney Gibson's failure to object to the mortgagee's motion to lift the stay, forfeiting thereby his clients' ability to retain equity in their home and permitting the unsecured mortgagee to become a secured creditor, constituted incompetent representation and demonstrated a lack of legal knowledge, skill, thoroughness and preparation reasonably necessary for representing the clients, in violation

of SCR 20:1.1.[2] In the referee's words, Attorney Gibson "failed his clients miserably." The referee concluded further that Attorney Gibson's failure to communicate adequately with the clients about their opportunity to oppose the motion and use the mortgagee's mistake to their advantage was a failure to communicate with his clients and keep them apprised of the status of their matter, in violation of SCR 20:1.4(a).[3]

¶ 18. However, the referee concluded that there was not clear and convincing evidence to establish the other two counts of professional misconduct the Board had alleged. First, it was not established that Attorney Gibson knowingly made a false statement to the bankruptcy court concerning his having discussed the motion with his clients and their decision not to object. While expressing doubts that such a discussion occurred, the referee suggested that when he made that statement to the bankruptcy court, Attorney Gibson believed he had discussed the motion with one of his clients.

¶ 19. Second, the referee concluded that there was insufficient evidence to establish that Attorney Gibson pressured his client to lie to the Board concerning a telephone discussion he claimed to have had with

---

[2] SCR 20:1.1 provides:

**Competence**
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[3] SCR 20:1.4(a) provides:

**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

her about the motion. The referee considered the matter merely a difference in two persons' recollections of an event.

¶ 20. As discipline for the professional misconduct in respect to the two counts the referee found supported by clear and satisfactory evidence, the referee recommended that Attorney Gibson's license to practice law be suspended for four months. In making that recommendation, the referee specifically took into account that the Board had sought a six-month license suspension, which the referee viewed as based on the misconduct the Board had alleged in all four counts of its complaint.

¶ 21. In this appeal and cross-appeal, we address first Attorney Gibson's argument that the referee improperly concluded that he engaged in professional misconduct in his representation of the clients in the bankruptcy matter. We find no merit to Attorney Gibson's contention that his decision not to object to the motion to lift the stay was reasonable, as it was possible that the objection would have been rejected. The testimony of the bankruptcy trustee and of the bankruptcy judge provides adequate support for the referee's conclusion that Attorney Gibson's failure to object to the motion constituted incompetent representation. By permitting an unsecured creditor to become a secured creditor, to the detriment of the unsecured creditors, he deprived his clients of an equity in their homestead and caused the proposed debt adjustment plan to fail.

¶ 22. Likewise without merit is Attorney Gibson's assertion that he acted competently in the matter by consulting the bankruptcy trustee about the motion to lift the stay. That assertion ignores the fact that Attorney Gibson did not receive advice from the trustee

concerning the matter when he telephoned, and he made no other attempt to contact the trustee while time remained to object to the motion. Further, we agree with the referee that the reason Attorney Gibson gave for his decision not to object to the motion, namely, that he was afraid the bankruptcy judge who had sanctioned him in the past might do so again, is "ludicrous on its face."

¶ 23. Attorney Gibson next argued that his client suffered no harm by virtue of the mortgagee's change from unsecured to secured creditor status. On the contrary, in addition to depriving them of the opportunity to have $40,000 available to pay their debts, Attorney Gibson's failure to oppose the motion to lift the stay prevented confirmation of the debt adjustment plan the clients had retained him to secure.

¶ 24. Attorney Gibson made no persuasive argument that the referee improperly concluded that he did not discuss the full consequences of the success or failure of the motion to lift the stay in such a way that his clients could understand their options and make a rational decision whether to object to it. The testimony of the clients and of the bankruptcy trustee provide adequate support for the referee's conclusion that Attorney Gibson failed to communicate adequately with his clients in the matter.

¶ 25. On the issue of what constitutes appropriate discipline for Attorney Gibson's professional misconduct in failing to provide his clients competent representation and communicate adequately with them, the Board contended that even without the additional counts of false representation to the bankruptcy court and interference with the Board's investigation of the matter by attempting to have his client make statements she did not believe to be true regarding Attorney

Gibson's claimed discussion with her, the seriousness of Attorney Gibson's misconduct warrants a six-month suspension of his license to practice law. That suspension is appropriate, in the Board's view, in light of the harm the misconduct caused the clients, the fact that Attorney Gibson's two previous suspensions for professional misconduct, including frivolous opposition to dismissals in several bankruptcy matters, and two sanctions from the bankruptcy court apparently were insufficient to ensure his competent practice of law, and the need to protect the public from further misconduct on his part. It is the Board's position that a six-month license suspension is required so that Attorney Gibson may not again be authorized to practice law without first assuring the court that, among other things, he has a proper understanding of the professional conduct rules and he will conform his conduct to them.

¶ 26. We agree. Of particular concern is Attorney Gibson's repeated insistence in his cross appeal that his conduct considered here did not violate any of the attorney professional conduct rules. A six-month license suspension will entail a reinstatement proceeding, which is necessary to establish that Attorney Gibson understands his obligations to clients and the legal system and will act competently in representing clients in that system. In addition, a six-month suspension will require Attorney Gibson to show that he has made restitution to the clients harmed by his misconduct in the bankruptcy matter or provide a satisfactory explanation of his failure or inability to have done so. SCR 22.28(4)(k).

¶ 27. IT IS ORDERED that the license of John W. Gibson to practice law in Wisconsin is suspended for

six months, commencing December 10, 1999, as discipline for professional misconduct.

¶ 28. IT IS FURTHER ORDERED that within 60 days of the date of this order John W. Gibson pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of John W. Gibson to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 29. IT IS FURTHER ORDERED that John W. Gibson comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 30. SHIRLEY S. ABRAHAMSON, C.J., did not participate.