**The PEOPLE of the State of Colorado, Complainant,**

v.

**Niel L. GOOD, Attorney–Respondent.**

**No. 94SA402.**

Supreme Court of Colorado,
En Banc.

April 3, 1995.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Asst. Disciplinary Counsel, Denver, for complainant.

Charles Goldberg, Samuel M. Ventola, Denver, for attorney-respondent.

PER CURIAM.

The hearing board in this lawyer discipline proceeding recommended that the respondent be suspended for nine months from the practice of law. A hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of the board. We issued a rule to show cause why more severe discipline should not be

imposed. After reviewing the record, and the responses of the respondent and assistant disciplinary counsel, we order that the respondent be suspended for one year and one day and be assessed costs.

I

Neither the assistant disciplinary counsel nor the respondent excepted to the board's findings of fact, and no transcript of the testimony has been filed in this court. We consider that the board's factual findings are supported by the record, and are binding on review. *People v. Podoll*, 855 P.2d 1389, 1390 n. 1 (Colo.1993). After listening to the testimony of the complainant's witnesses and of the respondent, and considering the exhibits introduced into evidence, the hearing board found that the following had been established by clear and convincing evidence.

On April 29, 1988, police officers executed a search warrant at the house of Susan Frederick. The officers seized various items of personal property from the house, including a tape found in the answering machine. Most of the property belonged to Frederick, but some may have belonged to her son, Mark Montoya a/k/a/ Mark Rupoli. Within a few days of the seizure, Frederick retained the respondent to recover her property from the police, and paid him $500. During the next few months, the respondent made several unsuccessful attempts to recover the property.

The hearing board found that in July 1988, during the course of their lawyer-client relationship, the respondent engaged in a sexual relationship with Frederick. The sexual relationship ended abruptly a few weeks after it began.

In September 1988, Frederick and her son were indicted on charges of conspiracy to distribute a Schedule II controlled substance, possession of a Schedule I controlled substance, and theft by receiving, all class 3 felonies. Frederick retained the respondent to represent her on these criminal charges. At trial, Frederick was convicted of conspiracy to distribute a controlled substance and theft by receiving. She was sentenced to two concurrent four-year sentences in the Department of Corrections.

The record shows that following her convictions, Frederick filed a Crim.P. 35(c) proceeding in the district court, alleging that the respondent had provided ineffective assistance of counsel at her trial because of the conflict created by their sexual relationship, the respondent's inadequate trial preparation, and his failure to call her son as a witness in her defense. The district court ultimately denied her motion for relief, *People v. Frederick*, No. 88CR921 (Jefferson County Dist. Ct. Aug. 31, 1992); and the court of appeals affirmed, *People v. Frederick*, No. 92CA1677 (Colo.App. Dec. 16, 1993) (not selected for official publication), *cert. denied*, No. 94SC130 (Colo. June 20, 1994).

The hearing board determined that in engaging in a sexual relationship with a client during the course of the professional relationship, the respondent violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). The board also found, however, that it had not been shown by clear and convincing evidence that the respondent had violated DR 5–101(A) (a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own personal interests); DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances); or DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship). In particular, the board concluded that there was no clear and convincing evidence that the sexual relationship affected the exercise of the respondent's professional judgment when he was trying to recover Frederick's property. Moreover, there was no evidence that the sexual relationship, which ended prior to his undertaking Frederick's defense on the criminal charges, adversely affected the exercise of the respondent's professional judgment in such defense.

The hearing board also found that, after Frederick's conviction on drug and theft by

receiving charges, the respondent undertook to represent her son, at her request. Montoya left Colorado before he was indicted, but not on the respondent's advice. Although the board found that it had not been demonstrated by clear and convincing evidence that the respondent actually advised or caused Montoya to secrete himself for the purpose of making him unavailable as a witness in his mother's case, it did find that the respondent told Montoya to "lay low" after he returned to Colorado, contrary to DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law).

The respondent has not excepted to the board's findings and conclusions regarding the above disciplinary violations, nor has the assistant disciplinary counsel.

## II

The general assembly has defined sexual contact between certain professionals and their clients or patients during the course of the professional relationship as either "unprofessional conduct" or criminal conduct. *See, e.g.,* § 12–43–704(1)(q), 5B C.R.S. (1991) (providing that sexual contact between psychotherapist and client is grounds for disciplinary action against psychotherapist); § 18–3–405.5, 8B C.R.S. (1994 Supp.) (defining crimes of aggravated sexual assault on a client by a psychotherapist and sexual assault on a client by a psychotherapist, and providing that the client's consent is not a defense to those offenses); § 12–29.5–106(1)(j), 5A C.R.S. (1994 Supp.) (sexual contact between acupuncturist and patient is grounds for disciplinary action); § 12–29.5–109, 5A C.R.S. (1991) (sexual contact between acupuncturist and patient is class 1 misdemeanor; sexual intrusion or penetration with a patient is a class 4 felony); § 12–32–107(2)(s), 5A C.R.S. (1991) (podiatrist may be disciplined for engaging in a sexual act with a patient during the course of patient care); § 12–35–118(1)(*l*), 5A C.R.S. (1991) (engaging in sexual act with patient during course of patient care is grounds for discipline of a licensed dentist or dental hygienist); § 12–36–117(1)(r), 5B C.R.S. (1991) (engaging in a sexual act with patient during course of patient care is ground for discipline for person licensed to practice medicine); § 12–40–118(1)(hh), 5B C.R.S. (1994 Supp.) (same; optometrist-patient); § 12–41–115(1)(b), 5B C.R.S. (1991) (same; physical therapist-patient).

This court, "as part of its inherent and plenary powers, has exclusive jurisdiction over attorneys and the authority to regulate, govern, and supervise the practice of law in Colorado to protect the public." *Colorado Supreme Court Grievance Committee v. District Court,* 850 P.2d 150, 151 (Colo.1993). No provision of the Code of Professional Responsibility or the Rules of Professional Conduct explicitly prohibits a sexual relationship between lawyer and client. Nonetheless, a sexual relationship between lawyer and client during the course of the professional relationship presents significant dangers, including, at the least, the potential that the client will be injured by the lawyer's conduct. "A sexual relationship between lawyer and client may involve unfair exploitation of the lawyer's fiduciary position, and/or significantly impair the lawyer's ability to represent the client competently, and therefore may violate both the Model Rules of Professional Conduct and the Model Code of Professional Responsibility." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92–364 at 1 (1992) (sexual relations with clients).

Because the lawyer stands in a fiduciary relationship with the client, an unsolicited sexual advance by the lawyer debases the essence of the lawyer-client relationship. *People v. Crossman,* 850 P.2d 708, 711 (Colo. 1993). Often the lawyer-client relationship is characterized by the dependence of the client on the lawyer's professional judgment, and a sexual relationship may well result from the lawyer's exploitation of the lawyer's dominant position. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92–364 at 2.

The inherently unequal attorney-client relationship allows the unethical lawyer just as easily to exploit the client sexually as financially. The trust and confidence reposed in a lawyer can provide an opportunity for the lawyer to manipulate a client emotionally for the lawyer's sexual benefit.

Moreover, the client may not feel free to rebuff unwanted sexual advances because of fear that such a rejection will either reduce the lawyer's ardor for the client's cause or, worse yet, require finding a new lawyer, causing the client to lose the time and money that has already been invested in the present representation and possibly damaging the client's legal position.

*Id.* at 6. A sexual relationship also presents the strong possibility of a conflict between the lawyer's personal interests and the best interests of the client, thus violating DR 5-101(A) (except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own personal interests), and R.P.C. 1.7(b) (a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests). *See People v. Zeilinger,* 814 P.2d 808, 809 (Colo.1991) (engaging in sexual relationship with client attorney represented in marital dissolution matter violates DR 1-102(A)(6) and DR 5-101(A)); *People v. Gibbons,* 685 P.2d 168, 175 (Colo.1984) (lawyer's sexual relationship with client, who was a defendant in a criminal proceeding, violated DR 5-101(A)).

A sexual relationship may also violate R.P.C. 3.7(a) (a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness), especially in a dissolution of marriage or child custody or support matter. *See Musick v. Musick,* 453 S.E.2d 361 (W.Va.1994) (lawyer's sexual relationship with a divorce client may violate W.Va. Rules of Professional Conduct 3.7 (lawyer shall not act as advocate in a case where the lawyer is likely to be a necessary witness)). *See generally* Gregory G. Sarno, Annotation, *Sexual Misconduct as Ground for Disciplining Attorney or Judge,* 43 A.L.R.4th 1062 (1986 & Supp.1992).

■ Because of the risks inherent in a sexual relationship between lawyer and client, such a relationship will, at a minimum, almost always violate R.P.C. 8.4(h) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), or, as in this case, DR 1-102(A)(6) (conduct adversely reflecting on the lawyer's fitness to practice law). *See People v. Bergner,* 873 P.2d 726, 727 (Colo.1994) (lawyer's conversation of sexual nature with client violated DR 1-102(A)(6)).

### III

■ The hearing panel approved the board's recommendation that the respondent be suspended for nine months, and the parties did not except to that recommendation. Nevertheless, we issued a rule to show cause why more severe discipline should not be imposed. In response the assistant disciplinary counsel suggests that discipline in the range of suspension for nine months to one year and one day is appropriate. The respondent argues that such severe discipline for the misconduct found by the board would be "unprecedented."

Whether that is true or not, the presence of significant factors in aggravation mandate a longer period of suspension. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards* ), prior discipline is an aggravating factor. *Id.* at 9.22(a). The respondent was suspended indefinitely in 1978 for a pattern of delay, procrastination, neglect, and misrepresentation by the respondent to his clients. *People v. Good,* 195 Colo. 177, 576 P.2d 1020 (1978). He was reinstated in 1984. In 1990, we publicly censured the respondent for neglect of a legal matter. *People v. Good,* 790 P.2d 331, 332 (Colo.1990). The misconduct in this case occurred four years after the respondent was reinstated, and thus the prior discipline was not too remote in time to be considered a serious aggravating factor. *See Good,* 790 P.2d at 332.

We also find it disturbing that, as the hearing board found, the respondent submitted false evidence to the board during the hearing. The hearing board found his testimony to the board "incredible" and also an aggravating factor under ABA *Standards* 9.22(f). The nature of the respondent's false testimony, which went to the nature and extent of the respondent's sexual relationship with his client, is not of the kind about which a witness may be mistaken or would suffer problems in recollection. *See People v. Wechsler,* 854 P.2d 217, 222-23 (Colo.1993).

The hearing board also concluded that the victim of the respondent's conduct, Frederick, was vulnerable. ABA *Standards* 9.22(h). The board found no factors in mitigation. Considering the nature of the respondent's unethical conduct, in conjunction with the factors in aggravation, we conclude that a suspension for one year and one day is not only appropriate, but necessary.

### IV

It is hereby ordered that Niel L. Good be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). It is further ordered that Good pay the costs of this proceeding in the amount of $369.64 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202. Good shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)–(d).