The PEOPLE of the State of Colorado, Complainant,

v.

Anthony M. THEODORE, Attorney–Respondent.

No. 96SA351.

Supreme Court of Colorado, En Banc.

Nov. 12, 1996.

---

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, and L. Michael Henry, Chief Investigative Counsel, Denver, for Complainant.

Leonard W.D. Campbell and John J. Mitchel, Montrose, for Attorney–Respondent.

PER CURIAM.

An inquiry panel of the supreme court grievance committee approved a stipulation, agreement, and conditional admission of misconduct between the respondent and the complainant, C.R.C.P. 241.18, which recommended that the respondent be disbarred. We accept the conditional admission and the recommendation.

I

The respondent was admitted to practice law in Colorado in 1981. The conditional admission proposed to resolve the charges contained in five formal complaints as well as matters in the investigative stage, and included the following stipulations:

A

On January 19, 1989, the respondent entered his appearance in a modification of custody proceeding on behalf of his client, who had paid him $500 when he was retained. The client's former husband had filed the motion to modify custody on January 4. The parties' marriage was dissolved in 1985, and custody of their three children was awarded to the wife.

After the attorney-client relationship was established, the respondent and his client engaged in a sexual relationship, in violation of DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), and DR 5–101(A) (except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client

will be or reasonably may be affected by the lawyer's own personal interests).

B

On September 23, 1991, the respondent filed a motion to modify child support and to enforce a provision of the dissolution decree on behalf of the client referred to above. This motion was still pending in May 1992 and had not been resolved. The court file indicates that the parties were ordered on October 18, 1991 to contact the clerk's office to set the matter for hearing. A minute order on the date reflects that the hearing had been set for November 26, 1991, but that the respondent informed the court the parties had reached an agreement and "intended to submit a written stipulation." The court ordered the parties to submit the written stipulation within thirty days. No such stipulation was submitted to the court.

An April 14, 1992 minute order stated that "the court has reviewed this matter and notes that there has been no stipulation submitted.... If the court does not receive a written stipulation within twenty days of today's date, the court will dismiss the underlying motion of the movant." A minute order dated May 1, 1992, states "there has been no response to the April 14, 1992, minute order, as such, the court finds that the motion to modify child support in divorce decree filed by [the respondent's client] on September 23, 1991, is hereby abandoned and the court hereby dismisses said pleading."

The foregoing conduct violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer).

C

Following his conviction on two counts of felony menacing with a deadly weapon, Mark R. McDowell was sentenced on November 22, 1991, to three years in the Department of Corrections. McDowell filed a pro se Crim.P. 35(c) motion for post-conviction relief. When the original lawyer appointed by the court to represent McDowell on the Crim.P. 35(c) motion was allowed to withdraw, the court appointed the respondent in July 1992.

McDowell sent the respondent two letters in August 1992 detailing the basis for his filing of the Crim.P. 35(c) motion. McDowell alleged that his public defender failed to investigate the facts of the case and failed to adequately advise him concerning testifying in court. The respondent filed an amended Crim.P. 35(c) motion on September 17, 1992. He also obtained the court's permission to hire an expert witness to review the case to determine whether McDowell's trial lawyer was ineffective or not. The expert wrote to the respondent on October 26, 1992, and indicated that, after reviewing the transcript and talking to McDowell, the expert could not give an opinion that the public defender's representation had been ineffective.

After a hearing at which McDowell testified, the court denied the Crim.P. 35(c) motion on November 3, 1992. McDowell states that immediately following the court's denial of the motion, he asked the respondent to appeal the denial and to file a Crim.P. 35(b) motion for reduction of sentence. The respondent agreed to handle both matters for McDowell.

In November 1992, McDowell wrote to the respondent:

> I haven't heard from you as to my 35(b) motion.... I am hoping to show to the court the extreme hardship my family is enduring, both financial and emotional as a justification for that. As I mentioned before, I would like a court date prior to the end of the year if at all possible. Please inform me as to your progress.

The respondent wrote to McDowell on November 17 asking for more specific information concerning the hardship to the family, employment opportunity, and so forth, to include in the Crim.P. 35(b) motion. McDowell's wife mailed the respondent copies of letters detailing the hardships the family was suffering as a result of her husband's imprisonment. The respondent did not, however, file either a Crim.P. 35(b) motion or appeal the denial of the Crim.P. 35(c) motion.

After hearing nothing from the respondent, McDowell filed a pro se Crim.P. 35(b) motion, which was denied by the court on March 15, 1993. McDowell was released from prison in August 1993.

As he has admitted, the respondent's conduct, which occurred before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 6–101(A)(3) and R.P.C. 1.3 (neglect of a legal matter); and R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

## D

The respondent represented the wife in a petition for dissolution proceeding in the Montrose County District Court. He entered his appearance on May 28, 1992. A magistrate conducted the hearing on permanent orders on August 26, 1992. The respondent's client and her ex-husband stipulated that they would have joint custody of their one child and that the ex-husband would pay $230 per month in child support.

The division of property and debts was contested in the proceeding. One significant issue involved whether or not the respondent's client had improperly kept rental income from the marital home received from a tenant, rather than forwarding the monthly payments to the mortgage company. His client gave him copies of receipts showing that she had purchased money orders to be sent to the mortgage company, but the respondent failed to produce the receipts at the hearing. The client says that the respondent told her that he had lost them.

The magistrate issued final orders on January 13, 1993. After reviewing the final orders, the client told the respondent that she was unhappy about several aspects of the orders dividing the property and debts. The respondent told her that he would appeal the matter. Some time later, she asked the respondent if he had filed an appeal of the magistrate's decision, and the respondent told her that he had. The decree of dissolution was entered on May 19, 1993.

During the next few months, the client contacted the respondent three or four times to find out "what was taking so long." The respondent informed her that "appeals take a long time," but that she could write letters to

the court. The client wrote to the court on August 11, 1993, setting forth her position on the division of property and debts and asking for a court date to review these matters. As of August 11, the respondent had not filed any type of request for reconsideration, appeal, or motion for review of the magistrate's order by the district court.

The lawyer for her former husband filed a Motion to Dismiss Appeal stating that the final orders were entered on January 13, 1993, the final decree was entered on May 19, 1993, and that under Rule 6(e) of the Colorado Rules for Magistrates, review of a magistrate's decision must be sought within fifteen days of the date of the order or judgment. On September 7, 1993, the district court denied the client's request to review the magistrate's orders.

The respondent then filed a Motion to Reopen on September 24, 1993, asserting that the district court's refusal to reopen the property division issues was an abuse of discretion. The motion to reopen was denied on December 9, 1993.

The respondent's conduct violated DR 6–101(A)(3) and R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (fail to keep a client reasonably informed about the status of a matter); and R.P.C. 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

### E

William Carter was arrested in August 1992 and charged with seven counts of sexual assault on a child. The children involved were Carter's two daughters. Carter hired the respondent to represent him. He was arraigned on October 1, 1992, and pleaded not guilty to the charges.

On December 14, 1992, the respondent and the district attorney signed a stipulation waiving Carter's right to a hearing to determine whether videotaped statements of the children should be admitted in lieu of live testimony and cross-examination of the children. Carter did not sign the stipulation or know of its existence. The respondent failed to explain the nature of the stipulation to his client and its possible ramifications, in viola-

tion of DR 6–101(A)(3) (neglect of a legal matter).

### F

Sheila Campbell retained the respondent on November 10, 1994, to defend her on a charge of cultivation of cannabis, a class 5 felony. Campbell paid the respondent an advance fee of $1,000, against which the respondent would charge $100 an hour. The respondent failed to place the $1,000 in a trust account in violation of R.P.C. 1.15(a).

Campbell states that the respondent did not return some of her telephone calls and did not fully advise her of pending court dates. On February 2, 1995, the respondent sent Campbell a statement showing a credit balance of $600.25. Campbell hired a new lawyer on March 10, 1995.

Campbell attempted to obtain a refund of the unused part of her advance fee many times from March 13 to April 26, 1995, at which time she filed a request for investigation with the Office of Disciplinary Counsel. Campbell received a $425 refund from the respondent in May 1995. The delay was caused, in part, by the respondent's change in bookkeepers.

The foregoing conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (fail to keep a client reasonably informed about the status of a matter); R.P.C. 1.15(a) (a lawyer shall hold property of clients separate from the lawyer's own property); and R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as refunding any advance fee that has not been earned).

### G

Donald L. Schmidt hired the respondent to represent him, James L. Schmidt, Carolyn Schmidt, and the estate of Leo Schmidt, in a civil action filed in Montezuma County District Court by David and Jeanne Pope. Plaintiff Jeanne Pope was a foster daughter of the decedent, Leo Schmidt, and she claimed that he had promised her she would be paid for taking care of him. The lawsuit

alleged that she had not been paid for her services and that she and Mr. Pope had been improperly removed from a mobile home they had owned.

The respondent's motion for change of venue was denied. The respondent never complied with the plaintiffs' request for production of documents, nor did he conduct any depositions or engage in substantive discovery on his own. And despite their repeated requests, the respondent did not communicate with his clients by telephone or letter, and did not tell them about two motions for sanctions filed by the plaintiffs' lawyer arising out of his failure to respond to the plaintiffs' discovery requests and to file a timely disclosure certificate.

Prior to trial, the court ruled that two of the respondent's witnesses had not been properly disclosed and would not be allowed to testify. In addition, the court struck the respondent's clients' counterclaim because it "was not set forth with sufficient particularity to apprise the plaintiffs of the nature of the claim." Following the trial, the court entered judgment in favor of the plaintiffs in the amount of $9,850.75.

On November 14, 1994, the court also ordered the respondent to pay attorney fees to the plaintiffs' lawyer in the amount of $725 within thirty days as a sanction. The opposing lawyer filed a verified motion for contempt in March 1995 based on the respondent's failure to pay the $725. The court issued a written order on April 7 indicating that the respondent had paid the $725 to the plaintiffs' lawyer, but ordering the respondent to pay an additional $900 by May 7, 1995 for the attorney fees necessary to enforce the court's November 14, 1994 order. The respondent's $725 check was returned for insufficient funds.

Although James Schmidt and Donald L. Schmidt retained new lawyers and advised the court that they were terminating the respondent's representation, he never withdrew, nor did he advise them of certain post-judgment depositions scheduled by the plaintiffs' lawyer. Finally, the respondent violated a district court order in a separate proceeding in which he represented James Schmidt as the personal representative of the Leo Schmidt estate by not timely filing the estate inventory.

The respondent has stipulated that his conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (fail to keep a client reasonably informed about the status of a matter); R.P.C. 3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); R.P.C. 8.4(b) (commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); and R.P.C. 8.4(d) (engage in conduct that is prejudicial to the administration of justice).

H

On November 24, 1994, the respondent was arrested for driving under the influence of alcohol. His blood alcohol content was 0.186. He pleaded guilty to driving while ability impaired in April 1995, and was sentenced to one year probation, two days of work release, twenty-four hours of useful public service, level II alcohol education, and therapy. The respondent did not, however, report this conviction to the disciplinary counsel as required by C.R.C.P. 241.16(b). The respondent also violated R.P.C. 8.4(h) (engage in conduct that adversely reflects on the lawyer's fitness to practice law), and 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes ground for lawyer discipline).

I

On July 23, 1993, Alejandro Cisneros-Cabrera, a Mexican national, and his wife, Maria Dolores Cisneros, pleaded guilty to possession of cocaine with intent to distribute. Cisneros-Cabrera was deported back to Mexico on October 31, 1994, as a result of the conviction. Cisneros hired the respondent in August 1995 to represent her husband. Another lawyer had represented Cisneros and her husband in the criminal proceedings.

The respondent was supposed to file a motion to vacate the conviction due to ineffective assistance of counsel, asserting that

their former lawyer, now deceased, had been taking prescribed medications which had impaired his mental abilities. Cisneros paid the respondent $400 initially, and, when he gave her a copy of the motion to vacate, she paid him an additional $800. After this, the respondent refused to take Cisneros's calls or otherwise communicate with her.

Cisneros hired another lawyer in early December 1995. The respondent told Cisneros that he would return only $280 of her fee, but even this refund check bounced and has still not cleared. The new lawyer filed a motion to vacate after discovering that the respondent had not filed anything.

### J

On December 20, 1995, the respondent pleaded guilty to harassment in violation of section 18–9–111(1)(a), 8B C.R.S. (1986), a class 3 misdemeanor. This conviction arose from a domestic violence incident in which the respondent pushed his wife to the floor and hit her in the face. The foregoing conduct violated R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice) and 241.6(5) (violating the criminal laws of a state or of the United States).

### K

The respondent represented Carl Kurtz in a dissolution of marriage proceeding. On August 30, 1993, Sandra Kurtz obtained a permanent restraining order against her husband. On May 18, 1994, in violation of the restraining order, the respondent drove his client, at his client's request, to the family home for the alleged purpose of inspecting the home's condition. Ms. Kurtz was outside and Mr. Kurtz shouted at her, although he did not get out of the automobile. This violated R.P.C. 1.2(d) (a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent); R.P.C. 8.4(d) (conduct prejudicial to the administration of justice); and R.P.C. 8.4(h) (conduct adversely reflecting on fitness to practice).

### L

Richard Shoenhair retained the respondent in July 1995 to represent him in a paternity matter in which he had already been determined to be the father of a child. The respondent was to obtain review of the matter and a possible second blood test. Shoenhair paid him $1,400.

The respondent wrote to the Mesa County Department of Social Services on August 24, 1995, and was notified that social services would conduct an administrative review of the Shoenhair matter. The respondent was asked to provide documents relating to Shoenhair's child support payments, but he failed to do so. He never filed any motion with the court on his client's behalf or presented any information to social services. He did not respond to any of his client's subsequent letters.

The respondent again violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (fail to keep a client reasonably informed about the status of a matter); R.P.C. 1.15(b) (fail to render appropriate accounting to client upon request); and R.P.C. 1.16(d) (fail to take steps to the extent reasonably practicable to protect a client's interests upon termination of representation, such as refunding any advance payment of fee that has not been earned).

### M

On May 10, 1996, the respondent pleaded guilty to two counts of driving a motor vehicle while his license was under restraint, contrary to section 42–2–138, 17 C.R.S. (1996 Supp.). He was sentenced to fifteen days imprisonment and a second consecutive term of forty days imprisonment, both with work release.

In a separate case, the respondent pleaded guilty on June 13, 1996, to driving under the influence of alcohol on April 23, 1996. He was sentenced to thirty-five days in jail, to be served consecutive to the above sentences. The respondent's blood alcohol content on April 23 was 0.17.

The foregoing conduct violated R.P.C. 8.4(h) (conduct adversely reflecting on fitness

to practice) and 241.6(5) (violating the criminal laws of a state).

## N

In September 1994, Jonathan Erickson hired the respondent on a contingent fee basis to represent him with respect to several claims against Sharon Kelley, including breach of contract. The respondent filed a complaint in the San Juan County District Court on behalf of Erickson. The respondent's $91 check for the filing fee was returned for insufficient funds, however, and has not been made good or replaced.

The respondent took no further action in the case, although he misrepresented that the case was being pursued. He even sent Erickson a copy of a subpoena for a witness the respondent had not in fact subpoenaed. The respondent thereby violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to keep a client reasonably informed); and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

## O

Rebecca Carrasco was involved in an automobile accident on October 9, 1994. The other driver's insurance company was Colorado Farm Bureau. After paying its insured's claims, Colorado Farm Bureau requested payment from Carrasco as subrogee of its insured. Carrasco hired the respondent to represent her. The insurer offered to settle its claim against the respondent's client for $1,000. On October 10, 1995, Carrasco's father delivered $1,000 to the respondent to settle the claim. The respondent's receipt stated, "$1,000—Farm Bureau Settlement."

The respondent did not, however, deliver the $1,000 to Colorado Farm Bureau, and, according to the conditional admission, the insurer has been damaged in the amount of $1,000 plus attorney fees.

The respondent admitted he thereby violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.15(a) (fail to hold property of clients separate from the lawyer's own property); R.P.C. 1.15(b) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly deliver to the client or third person any funds the client or third person is entitled to receive); and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

## P

The respondent represented Dani Koch, the defendant in a civil action pending in Arapahoe County Court. When neither the respondent nor his client appeared on the trial date, March 16, 1994, the court entered a default judgment against Ms. Koch in the amount of $1,362.92, plus costs of $81.00.

On February 2, 1996, Ms. Koch filed a pro se motion to vacate the default judgment. The respondent was ordered to appear on June 16, 1996, but he filed a motion to continue on May 31, 1996 that did not disclose that the reason he wanted a continuance was that he was in jail. *See* § I(M) above. The motion to continue was denied, and the respondent did not appear in court on June 6. The foregoing conduct once again violated R.P.C. 8.4(d) (conduct that was prejudicial to the administration of justice).

## Q

Juan Alberto Bojorquez paid the respondent $1,000 on March 22, 1996, to represent him in a criminal case. The respondent entered his appearance of behalf of his client in the Montrose County Court. After the case was bound over on felony charges, the respondent appeared in the district court. Following the respondent's incarceration, *see* § I(M) above, the court appointed a new lawyer for Bojorquez. The respondent did not earn the $1,000 advance fee nor has he returned any of it. The respondent has stipulated that his conduct violated R.P.C. 1.16(d) (failure to return unearned advance fee upon termination of representation).

## II

■ No lengthy analysis of proper discipline is necessary in this case. The respondent and the deputy disciplinary counsel acknowledge that disbarment is warranted. The inquiry panel agreed, and so do we.

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), in the absence of mitigating factors, disbarment is generally appropriate when:

> (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
>
> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
>
> (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. The respondent has consented to disbarment and neither of the parties has presented mitigating evidence that would make a lesser sanction appropriate. We therefore accept the conditional admission and the inquiry panel's recommendation.[1]

### III

It is hereby ordered that Anthony M. Theodore be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the issuance of this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $1,606.61 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.

HOBBS, J., does not participate.

---

**1.** The deputy disciplinary counsel's analysis of discipline states: "Due to the extensive nature of respondent's mishandling of client funds, as well as respondent's indigency, matters regarding restitution were not addressed in this stipulation. Rather, the issue of restitution will be addressed if respondent ever petitions for readmission into the Colorado Bar."

Should the respondent ever attempt to be readmitted, his efforts with respect to restitution will be a substantial factor in determining whether he has demonstrated his rehabilitation by clear and convincing evidence. C.R.C.P. 241.22(a).