The PEOPLE of the State of
Colorado, Complainant,

v.

**Fred Yancy BOYER, Attorney–**
**Respondent.**

No. 97SA27.

Supreme Court of Colorado,
En Banc.

March 31, 1997.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, Denver, for Complainant.

John M. Richilano, Denver, for Attorney–Respondent.

Justice KOURLIS delivered the Opinion of the Court.

This lawyer discipline proceeding comes to us on a stipulation, agreement and condition-

---

al admission of misconduct between the respondent and the deputy disciplinary counsel. C.R.C.P. 241.18. The conditional admission recommends discipline in the range of a public censure to a suspension for 180 days, under certain conditions. An inquiry panel of the supreme court grievance committee approved the conditional admission with the recommendation of the suspension and conditions. We accept the conditional admission and the inquiry panel's recommendation.

## I.

The respondent was admitted to practice law in Colorado in 1985. The parties stipulated to the following facts and disciplinary violations.

## A.

A woman retained the respondent in July 1990 to represent her in legal separation proceedings. The respondent filed a petition for a decree of legal separation on his client's behalf on July 13, 1990. The client's husband filed a counterclaim for a dissolution of marriage.

Soon after becoming the client's lawyer, the respondent and his client began a social and personal relationship that developed into a sexual relationship in October of 1990 and continued during the respondent's legal representation.

The respondent has admitted that his conduct violated DR 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law), and DR 5–101(A) (representing a client when the lawyer's judgment on behalf of the client would be affected by the lawyer's own personal interests). *See People v. Zeilinger,* 814 P.2d 808, 809 (Colo.1991) (engaging in sexual relationship with marital dissolution client violated DR 1–102(A)(6) and DR 5–101(A)).

## B.

On or about October 28, 1990, the respondent met another woman at a restaurant who had just been served with a dissolution of marriage action. The woman talked about her legal problems with the respondent. She believed that the respondent would represent her in the dissolution. The respondent and the woman then engaged in sexual intercourse.

The woman initially represented herself in the dissolution proceeding through November and December 1990. On January 8, 1991, however, she was arrested following an altercation with her husband. Shortly thereafter, the respondent entered his appearance in both the criminal case and the dissolution proceeding on the woman's behalf.

Although he did not believe that he had undertaken representation of the woman when they engaged in intercourse, the respondent has admitted that the woman believed he had agreed to represent her. The respondent's conduct therefore again violated DR 1–102(A)(6) and DR 5–101(A).

## C.

The respondent has stipulated that he used cocaine occasionally during the years 1990 and 1991. At the same time, he developed a substantial alcohol dependency. The foregoing conduct violated DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude), and C.R.C.P. 241.6(5) (violating the criminal laws of a state or of the United States constitutes grounds for lawyer discipline).

## D.

On May 9, 1992, the respondent had been drinking and boating at a lake. At about 5:00 p.m., the respondent and his wife, along with two friends, began driving home in the respondent's vehicle. The vehicle, which the respondent was driving, went into a ditch near Loveland. A witness to the accident helped the respondent out of the driver's seat. The respondent had a severe laceration on his lip and a concussion. The respondent then told his wife, who had exited from behind the driver's seat, "Remember, you were driving."

The respondent also initially told a police officer investigating the accident that his wife had been driving. The witness who helped the respondent from the vehicle after the accident told the officer that the respondent

had been behind the wheel. The respondent then admitted to a police sergeant at the scene that he had been driving. The respondent submitted to a blood test which revealed his blood alcohol level to have been 0.146%. No one other than the respondent was injured in the accident, and the police sergeant described the respondent's behavior as "extremely cooperative."

Consequently, on August 18, 1992, the respondent pleaded guilty to driving under the influence of alcohol and received a deferred judgment and sentence. The respondent admitted that the above conduct violated DR 1-102(A)(6) (conduct adversely reflecting on fitness to practice), and C.R.C.P. 241.6(5) (violation of the criminal laws of a state or of the United States).[1] *See People v. Fahselt,* 807 P.2d 586, 587 (Colo.1991) (convictions for vehicular assault, driving under the influence of intoxicating liquor, failing to maintain liability insurance, and reckless driving, violate DR 1-102(A)(6) and C.R.C.P. 241.6(5)).

## II.

The inquiry panel approved the conditional admission,[2] and recommended that the respondent be suspended for 180 days together with additional conditions to monitor the respondent's abstinence from alcohol and drug use. We agree with the inquiry panel.

■ This is a difficult case in which to uphold our role of enforcing standards of attorney conduct while still giving due regard to individual mitigating circumstances. Our acceptance of the conditional admission and adoption of a suspension for 180 days hinges upon the evidence in the record of respondent's mental disability and chemical dependency as causative factors in his misconduct, which factors have been addressed through recovery such that recurrence of the misconduct is unlikely. Absent such mitigation, the conduct would certainly warrant more severe discipline.

■ Although the deputy disciplinary counsel states that "there is no evidence of harm to either" of the two women clients who consented to intercourse, we have clearly held in the past and here reaffirm that a sexual relationship between lawyer and client during the course of the professional relationship is inherently and insidiously harmful. The relationship can undermine the lawyer's professional integrity and judgment and dishonor the client's trust. *See People v. Good,* 893 P.2d 101, 103 (Colo.1995).

Additionally, the respondent's admitted use of cocaine warrants a suspension for some period of time:

The commission of serious offenses involving the use or possession of illegal drugs by an attorney warrants a substantial disciplinary sanction. *People v. Davis,* 768 P.2d 1227, 1229-30 (Colo.1989). In such cases we have generally applied Standard 5.12 of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & 1992 Supp.) (ABA *Standards*). *People v. Moore,* 849 P.2d 40, 43 (Colo.1993). Thus, in the absence of aggravating or mitigating factors, suspension is appropriate when "a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." *Id.* at 5.12.

*People v. Stevens,* 866 P.2d 1378, 1379 (Colo. 1994) (lawyer suspended for one year and one day for purchasing $25 worth of crack cocaine while serving as a judicial officer).

Further, the respondent was convicted of driving under the influence of alcohol and he initially lied about the circumstances of the accident that gave rise to the conviction and directed his wife and the other passengers in his automobile to do the same. The lie was quickly retracted, and respondent's ability to form an intent to misrepresent the truth may have been impacted by a concussion and alcohol; nonetheless, we view his conduct as

---

1. The assistant disciplinary counsel indicates that because of the serious injury to the respondent's head resulting from the accident, and his level of intoxication, it cannot be established that the respondent intentionally violated DR 1-102(A)(4)

(a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

2. The inquiry panel initially recommended a 60 day suspension, which the court rejected.

falling far below that which this court and the public necessarily demand of individuals who hold themselves out as lawyers.

The respondent's illegal drug use combined with his DUI conviction and sexual relationships with two clients would usually call for a longer period of suspension than 180 days; however, a number of the mitigating factors raised by the complainant have persuaded us to accept the conditional admission.

The respondent has no history of previous discipline, which is a mitigating factor under ABA *Standards for Imposing Lawyer Sanctions* (ABA *Standards* ) 9.32(a) (1991 & 1992 Supp.). In addition, the respondent has made full and free disclosure to the disciplinary counsel, *id.* at 9.32(e); and the respondent has demonstrated remorse, *id.* at 9.32(*l* ). Further, at the time of the misconduct, the record clearly reflects that the respondent was suffering from a serious bipolar personality disorder occasioned by childhood trauma and for which he had never been treated. The disorder was complicated by alcohol and chemical dependency. We conclude from the record that the disability and dependency were substantial contributing causes of the offenses, and are thereby entitled to great weight in mitigation. ABA *Standards* 9.32(i) (1992 Supp.) provides that:

> (i) mental disability and chemical dependency [may be considered as a mitigating factor] when:
> (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
> (2) the chemical dependency or mental disability caused the misconduct;
> (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

> (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

Following the recited instances of misconduct, the respondent began intensive psychotherapy and a medication program, both of which continue to date. Respondent's treating professionals report a positive prognosis and opine that the treatment arrested the misconduct and that recurrence of misconduct is unlikely. In order to ensure that the misconduct does not recur, the respondent has agreed to continue his current psychotherapy for two years or until he is released by his treating psychotherapist, and to undergo random alcohol and cocaine testing for two years following the decision in this case. The deputy disciplinary counsel represents that the respondent has undergone routine drug screening as part of the conditional admission and that the "drug screens have been negative to date." We do not excuse respondent's conduct. His violations were serious and require suspension. We accept the conditional admission and the inquiry panel's recommended period of suspension because we are persuaded that respondent was indeed suffering from mental disability and chemical dependency which were substantial contributing factors in the offenses, and because respondent has demonstrated a meaningful period of successful rehabilitation that has likely arrested the misconduct.

### III.

Accordingly, it is hereby ordered that Fred Yancy Boyer be suspended from the practice of law for 180 days, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that the respondent comply with the conditions [3] contained in the addendum to stipulation, agreement, and conditional admission of

---

**3.** 1. Respondent will continue with psychotherapy for a period of two years from the date of the Supreme Court's decision in this matter, or until such time that respondent is released from psychotherapy treatment by his treating psychotherapist. Respondent and/or his counsel will notify the Office of Disciplinary Counsel prior to termination of psychotherapy if such termination occurs prior to the two year term.

2. Respondent will continue random alcohol and cocaine testing for a period of two years from the date of the Supreme Court's decision in this matter. Such random testing will occur at least once every three months throughout the two year period. All test results from the random alcohol and cocaine tests will be forwarded to the Office of Disciplinary Counsel.

misconduct, which conditions are attached as an appendix to this opinion. It is also ordered that the respondent pay the costs of this proceeding in the amount of $106.94 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.

SCOTT, J., dissents.

VOLLACK, C.J., and BENDER, J., did not participate.

Justice SCOTT dissenting:

In this lawyer disciplinary proceeding, the majority accepts the stipulation, agreement, and conditional admission of misconduct ("stipulation") entered into by the respondent and the deputy disciplinary counsel. The majority further accepts the inquiry panel's recommendation of a 180–day suspension as the appropriate discipline for the respondent. I dissent because I would reject the stipulation and the recommendation of a 180–day suspension as too lenient for conduct the majority, itself, describes as "serious," maj. op. at 1364, and "inherently and insidiously harmful," *id.* at 1363. Moreover, respondent's conduct involves: (1) the use of a controlled substance; (2) driving under the influence and then making false statements to police officers investigating an accident caused by the respondent; *and* (3) inappropriate sexual conduct with clients. Instead, I would remand the case to the panel for a full hearing.

## I.

The respondent, Fred Y. Boyer, has stipulated to numerous facts and several disciplinary violations. In the stipulation entered into by the respondent and the deputy disciplinary counsel, the parties agreed that acceptance of the stipulation would result in imposition of disciplinary sanctions ranging from a public censure to a 180–day suspension.

## A.

The respondent stipulated that he engaged in a sexual relationship with a client while he represented her in a dissolution of marriage. The respondent admitted that his conduct violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law) and DR 5–101(A) (except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests).

Additionally, the respondent stipulated that he engaged in sexual intercourse with a woman who had consulted the respondent for a dissolution of marriage and who believed that the respondent had undertaken to represent her in the matter. The respondent again admitted that his conduct violates DR 1–102(A)(6) and DR 5–101(A).

## B.

In the stipulation entered into by the respondent and the deputy disciplinary counsel, the respondent admits that he used cocaine occasionally during the years 1990 and 1991. This conduct violates DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude) and C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States constitutes grounds for lawyer discipline).

## C.

The stipulation further states that on May 9, 1992, the respondent had been drinking beer while boating at Lake Loveland. As the respondent drove his car to Boulder, he drove into a roadside ditch. The respondent then told his wife, who exited from behind the driver's seat, "Remember, you were driving." When questioned, the respondent told a police officer that his wife was driving the vehicle. It was only after his explanation was refuted by an eye witness and he was confronted by the investigating officer that respondent later admitted that he was driving the vehicle. The respondent submitted to a blood test, which indicated that his blood alcohol level was 0.146%. The respondent pleaded guilty to driving under the influence

of alcohol and received a deferred judgment and sentence. The respondent stipulated that his conduct violates DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice) and C.R.C.P. 241.6(5) (violation of the criminal laws of a state or of the United States).

## II.

Our precedent provides useful guidelines for the appropriate disciplinary sanction to be imposed in this case. In *People v. Crossman*, 850 P.2d 708 (Colo.1993), this court suspended an attorney for one year and one day after the attorney stipulated that he had solicited sexual favors from three prospective clients. This court accepted the recommended suspension only after considering various mitigating factors, and stated that "[b]ut for these factors in mitigation, we would reject the recommended [suspension of one year and one day] as too lenient." *Id.* at 712. Similarly, in *People v. Good*, 893 P.2d 101, 104–05 (Colo.1995), we rejected the hearing panel's recommendation that the respondent attorney be suspended for nine months and instead suspended him for one year and one day due to his sexual relationship with a client.

Additionally, this court has evaluated several disciplinary proceedings involving an attorney's use of cocaine. In *People v. Stevens*, 866 P.2d 1378 (Colo.1994), this court suspended an attorney for one year and one day for purchasing crack cocaine. In *People v. Abelman*, 744 P.2d 486 (Colo.1987), this court suspended an attorney for six months for using cocaine. In *People v. Holt*, 832 P.2d 948 (Colo.1992), we suspended an attorney for one year and one day for using cocaine and for failing to file or pay federal and state taxes. We imposed a lengthier suspension in *Holt* than in *Abelman* because the conduct in *Holt* was more egregious due to the additional violations beyond the use of cocaine. *See Holt*, 832 P.2d at 950.

This court has also imposed disciplinary sanctions on an attorney for driving under the influence of alcohol as a violation of DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice) and C.R.C.P. 241.6(5) (violation of the criminal laws of a state or of the

United States). *See People v. Fahselt*, 807 P.2d 586 (Colo.1991).

In light of our precedent, I find that the panel's recommendation of a 180–day suspension in this case is too lenient. We have found that when an attorney engages in sexual conduct with his client, a one-year and one-day suspension is appropriate, even in consideration of mitigating factors. Indeed, in the last four years, this court has not imposed less than a one-year and one-day suspension on an attorney who has engaged in, *inter alia*, a sexual relationship with a client. See, e.g., *People v. Theodore*, 926 P.2d 1237, 1243 (Colo.1996); *People v. Dawson*, 894 P.2d 756, 758 (Colo.1995); *Good*, 893 P.2d at 102; *Crossman*, 850 P.2d at 712. We should thus impose disciplinary sanctions in this case comparable to those imposed in the past.

Furthermore, while we have determined that a six-month suspension is an appropriate disciplinary sanction for an attorney's use of cocaine, *Abelman*, 744 P.2d 486, we have held that a one-year and one-day suspension was appropriate when an attorney's use of cocaine was coupled with other violations of the disciplinary rules, *see Holt*, 832 P.2d 948. In the instant case, the respondent did not merely use cocaine, but also violated other disciplinary rules by engaging in sexual relationships with his clients and by driving while under the influence of alcohol. The respondent's case is therefore similar to *Holt* and should be decided accordingly.

The majority nevertheless states: "Our acceptance of the conditional admission and adoption of a suspension for 180 days hinges upon the evidence in the record of respondent's mental disability and chemical dependency as causative factors in his misconduct, which factors have been addressed through recovery such that recurrence of the misconduct is unlikely. Absent such mitigation, the conduct would certainly warrant more severe discipline." Maj. op. at 1363. In addition, the majority concludes "we are persuaded [in part] ... because respondent has demonstrated a meaningful period of successful rehabilitation that has likely arrested the misconduct." *Id.* at 1364. It is important to

note, however, that the 1992 amendments to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1992 Supp.) (ABA *Standards* ), deleted interim rehabilitation as a mitigating factor.[1]  *See People v. Brady,* 923 P.2d 887, 889 (Colo.1996) (" 'Interim rehabilitation' as a mitigating factor was ... deleted in 1992."). I therefore find the majority's significant reliance on that factor inappropriate.

In attempting to explain the imposition of the sanction here, the majority further states:

> Following the recited instances of misconduct, the respondent began intensive psychotherapy and a medication program, both of which continue to date. Respondent's treating professionals report a positive prognosis and opine that the treatment arrested the misconduct and that recurrence of misconduct is unlikely.

Maj. op. at 1364. Again, I disagree with the majority's justification for the sanction. As noted above, interim rehabilitation is no longer listed by the ABA *Standards* as a mitigating factor. Moreover, while I agree with the majority that "[w]e [can]not excuse respondent's conduct," *id.,* I am aware of no lawyer discipline case, and the majority cites none, in which this court has stated that sanctions should be affected by the fact of interim rehabilitation or that the respondent's conduct has not been repeated. Neither of these factors are considered mitigating factors in our prior case law or in the ABA *Standards* and we should not open the door to such considerations here.

### III.

The stipulation entered into by the respondent and the deputy disciplinary counsel limits the imposition of disciplinary sanctions to a maximum 180–day suspension. In my view, by accepting the stipulation and recommendation, the majority approves of a lower baseline for sanctions that may be imposed for such conduct in the future. Having expressed my dissent today, I will of course apply the standard in future cases. Until then, however, because I do not agree that this new baseline is appropriate in light of respondent's conduct, and would therefore reject the stipulation and the recommended 180–day suspension, I respectfully dissent.

---

1. On February 4, 1992, the House of Delegates of the American Bar Association adopted amendments to the ABA Standards for Imposing Lawyer Sanctions. During that session, subsection (j)—"interim rehabilitation"—was deleted from section 9.32, which lists the factors that may be considered in mitigation. *See* ABA *Standards,* Standard 9.3.