**In re Richard ROE, Debtor.**

**Jane Doe, Plaintiff,**

**v.**

**Richard Roe, Defendant.**

United States Bankruptcy Court, D. Connecticut.

Feb. 12, 2002.

Mark E. Block, Esq., Shafner, Stuart, Kelly & Morris, P.C., Norwich, CT, for Plaintiff.

Joel M. Grafstein, Esq., Grafstein and Associates, Farmington, CT, for Defendant.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

In this adversary proceeding, the court, on January 9, 2001, entered an order on the defendant-debtor's motion, to which the plaintiff consented, to seal the proceeding and to restrict access to the file, without further court order, only to the parties and their counsel. *See* Bankruptcy Code § 107(b)(2); Fed. R. Bankr.P. 9018. In light of that order, the court in this memorandum of decision, which may possibly become public, will refer to the parties as "plaintiff" and "debtor."

### II.

The debtor, together with his wife, filed a joint Chapter 7 petition on February 14, 2000. The plaintiff thereafter timely filed a complaint against the debtor to determine the dischargeability of a liquidated $30,000 debt. The complaint, in the First Count, relies upon Bankruptcy Code § 523(a)(6) (debt not discharged for "willful and malicious injury by the debtor to another entity") for its claim of nondischargeability. The following background is based upon a trial on the complaint held on October 3, 2001, at which the plaintiff and the debtor were the sole witnesses. The parties submitted extensive post-trial briefing.

### III.

#### A.

The debtor, in 1993, was a Connecticut attorney, in practice since 1972, and married with two children. He primarily handled family law matters. In July 1993, the plaintiff, then a 28–year–old married woman with three children, retained the debtor

to represent her in a state-court marriage dissolution proceeding. She paid the debtor a $1,000 retainer.

The state-court action was contentious, involving disputes over support obligations, and child custody. The state court, in September 1994, dissolved the plaintiff's marriage, but monetary issues were not fully resolved. The plaintiff, who worked part-time as a hairdresser, was then in a poor financial position.

The plaintiff testified that on the day of the court's marriage dissolution order, the debtor suggested to her that they engage in a sexual relationship, and he, in return, would assist her financially. Although she did not initially agree, the plaintiff stated that, a few weeks later, she did engage in such a relationship on two occasions— once, at the debtor's cabin, and the second time at the debtor's residence. She then terminated the relationship and the retention of the debtor as her counsel. She testified that the sexual relationship caused her to become seriously depressed and suicidal, requiring medication and professional counseling. In July 1995, the plaintiff brought a state-court action against the debtor based, in part, upon the debtor allegedly luring her into a sexual relationship.

During October 1999, the plaintiff and the debtor reached a settlement of the state-court action under which the debtor delivered his $30,000 promissory note to the plaintiff. This note, which was payable in full on April 11, 2000, was secured by a mortgage on the debtor's residence. The parties also exchanged mutual releases. The plaintiff's release of the debtor contained a confidentiality clause in which she generally agreed not to disclose the settlement terms and that a breach of such

agreement would forfeit the settlement proceeds.[1]

The debtor testified that, although he sought to assist the plaintiff with her financial problems by having her clean his cabin and his residence at an hourly fee of $10.00, he neither requested nor had sexual relations with her, as she claimed, on the two occasions. He stated that the settlement was motivated by his mounting legal costs in defending the law suit. He further stated that the plaintiff remained liable to him for unpaid legal fees totaling about $8,000 for services he rendered her in the marriage dissolution proceeding. The debtor agreed that the relationship the plaintiff described, if true, "would be in violation of the Code of Professional Conduct." (Tr. at 83.)

### B.

As noted, the debtor filed his bankruptcy petition on February 14, 2000, prior to the due date of the promissory note. The court, shortly thereafter, granted relief from stay to the holder of a senior mortgage on the debtor's residence. The foreclosure resulted in the plaintiff's junior mortgage being foreclosed out due to lack of equity. The plaintiff's complaint in Count Three contends, under Bankruptcy Code § 523(a)(2)(A), (debt incurred through fraud not discharged), that the $30,000 settlement debt was fraudulently obtained due to the debtor's failure to reveal to the plaintiff that he intended prior to payment to file a bankruptcy petition in order to discharge the debt.

### C.

The debtor's answer to the complaint denies that any sexual relationship occurred. It also includes a special defense asserting that the plaintiff's action in

---

**1.** The confidentiality clause contained as an exception, communication between the plaintiff "and medical providers for the purposes of medical treatment." (Pl.'s Ex. 4.)

bringing her nondischargeability complaint, disclosing the details of the state-court action, eliminates under the confidentiality clause provision the debtor's liability on the $30,000 promissory note.

## IV.

### A.

Despite the parties having been engaged for four years litigating in state court, neither the plaintiff nor the defendant sought to introduce any evidence to support each party's version of the relationship between them post September 1994. The court is thus left to evaluate the credibility of the parties in their conflicting testimony, with only the limited surrounding circumstances outlined in Part III to be factored in. Upon due reflection of these components, the court finds that it is more likely than not that the parties, while lawyer and client, did engage in the sexual relationship to which the plaintiff testified. This finding is, of course, only the first step in dealing with the ultimate issue of nondischargeability under § 523(a)(6).

### B.

The burden of proof on a creditor in an action to determine nondischargeability is the preponderance-of-the-evidence standard. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (rejecting the argument that a creditor should be required to meet the clear-and-convincing-evidence standard in nondischargeability actions).

Both sides concur that the latest explication of § 523(a)(6)'s reference to "willful and malicious injury by the debtor" is contained in the ruling in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), which involved the dischargeability of a medical malpractice judgment attributable to negligent or reckless conduct. The Supreme Court there determined that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61, 118 S.Ct. 974. "We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64, 118 S.Ct. 974. The Court rejected the interpretation that (a)(6) included "situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor." *Id.* at 62, 118 S.Ct. 974.

Second Circuit case law defines "willful" as meaning "deliberate or intentional" and concludes "[i]mplied malice may be demonstrated by the acts and conduct of the debtor in the context of the surrounding circumstances." *In re Stelluti*, 94 F.3d 84, 87–88 (2d Cir.1996) (Internal quotation marks omitted.) Further, bankruptcy courts in this circuit have ruled that "[m]alice is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Krautheimer v. Krautheimer, (In re Krautheimer)*, 241 B.R. 330, 341 (Bankr. S.D.N.Y.1999) (internal quotation marks omitted); *see also Aldus Green Co. v. Mitchell, (In re Mitchell)*, 227 B.R. 45, 51 (Bankr.S.D.N.Y.1998).

### C.

Neither the court nor the parties have located case authority, post *Geiger*, dealing with circumstances comparable to this nondischargeability proceeding involving an attorney and a client. There are, however, a published ethical opinion and state-court rulings which are instructive. These authorities consistently condemn sexual rela-

tionships between an attorney and his or her client as being predictably harmful to the client's physical and emotional well-being. This is so, notwithstanding that there is no provision in the Code of Professional Responsibility or The Rules of Professional Conduct explicitly prohibiting sexual relationships between lawyers and clients.

Formal Opinion 92–364 of the ABA Commission on Ethics and Professional Responsibility reads, in part, as follows:

A sexual relationship between lawyer and client may involve unfair exploitation of the lawyer's fiduciary position, and/or significantly impair a lawyer's ability to represent the client competently, and therefore may violate both the Model Rules of Professional Conduct and the Model Code of Professional Responsibility.

. . . .

The same fundamental principle of fiduciary obligation that underlies the specific rules governing attorney-client financial dealings implies as well that a lawyer should not abuse the client's trust by taking sexual or emotional advantage of a client. Protecting a client's emotional and physical well-being is surely as important as protecting the client's financial well-being. The inherently unequal attorney-client relationship allows the unethical lawyer just as easily to exploit the client sexually as financially. The trust and confidence reposed in a lawyer can provide an opportunity for the lawyer to manipulate a client emotionally for the lawyer's sexual benefit. Moreover, the client may not feel free to rebuff unwanted sexual advances because of fear that such a rejection will either reduce the lawyer's ardor for the client's cause or, worse yet, require finding a new lawyer, causing the client to lose the time and money that

has already been invested in the present representation and possibly damaging the client's legal position.

In the following rulings, state courts have determined that an attorney who pursues a sexual relationship with a client while representing the client in a marriage dissolution action violates the Rules of Professional Conduct and Code of Professional Responsibility. *See People v. Boyer,* 934 P.2d 1361, 1363, 21 C.J. 431 (Colo. 1997) (suspending lawyer for 180 days from the practice of law for engaging in sexual relationship with client while representing client in a marital dissolution case and stating that a sexual relationship between lawyer and client is "inherently and insidiously harmful"); *Disciplinary Counsel v. Paxton,* 66 Ohio St.3d 163, 164, 610 N.E.2d 979 (1993) (finding that a lawyer engaging in a consenting romantic relationship with client while representing client violates disciplinary rules warranting public reprimand); *In re Rudnick,* 581 N.Y.S.2d 206, 207, 177 A.D.2d 121 (1992) (suspending lawyer for two years from practicing law for having sexual relations with client); *In re Lewis,* 262 Ga. 37, 38, 415 S.E.2d 173 (1992) (suspending lawyer for three years from practicing law for having violated standards of conduct by engaging in sexual relations with a client while representing her in a marital dissolution proceeding).

### D.

■ The court finds that the debtor, a Connecticut attorney experienced in the field of family law, solicited and consummated a sexual relationship with the plaintiff, his client, in return for his promised financial assistance to the plaintiff during a contested marriage dissolution proceeding, and that the debtor is charged with the knowledge that such a relationship almost certainly would cause (as it did) physical

**66**

and emotional injury to the plaintiff. The court further finds, as informed by the *Geiger* ruling, that such actions by the debtor amount to an intentional tort[2] and constitute willful and malicious injury under the provisions of § 523(a)(6). *Cf. Johnson v. Fors (In re Fors)*, 259 B.R. 131, 137 (8th Cir. BAP 2001) (holding that a chiropractor engaged in willful and malicious conduct in having a sexual relationship with his patient). Accordingly, a judgment will enter that the $30,000 obligation of the debtor to the plaintiff under the First Count is determined to be nondischargeable.

### E.

The court, as to the remaining issues, determines that the plaintiff has not carried her burden of proof under Count Three as to her allegation that the debt is nondischargeable pursuant to § 523(a)(2)(A). The court does not find that the debtor believed there was no equity in his residence for the plaintiff's mortgage or that at the time of delivering the $30,000 note the debtor was planning on filing a bankruptcy petition in order to discharge the debt. Finally, the court concludes that the action of the plaintiff in filing her nondischargeability complaint is not a violation of the confidentiality agreement sufficient to forfeit her right to the settlement amount.

### V.

### CONCLUSION

In accordance with the foregoing, a judgment will enter that under the First Count the obligation of the debtor to the plaintiff evidenced by the $30,000 promissory note is not discharged, pursuant to

§ 523(a)(6), that judgment enter for the debtor under Count Three, and that the debtor's special defense is overruled as the plaintiff did not violate the confidentiality clause.

---

**2.** "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treat-ed by the law as if he had in fact desired to produce the result." Restatement (Second) of Torts § 8A, Comment b (1964).